17778

EAGLE FIRE COMPANY OF NEW YORK, Appellant, v. Shirley Jill MULLINS, a minor over the age of fourteen (14) years; A. A. Tinsley; Marvin E. Seay, Jr.; and Marvin E. Seay, Sr., Respondents.

(120 S. E. (2d) 1)

*Messrs. Chester D. Ward, Jr.,* and *Rufus M. Ward,* of Spartanburg, *for Appellant,*

274

*Messrs. E. W. Johnson* and *Frank Sawyer,* of Spartanburg, *for Respondent, Shirley Jill Mullins,* 

May 10, 1961.

LEGGE, Justice.

Plaintiff appeals from an adverse judgment, alleging error in the trial judge's charge to the jury.

On January 1, 1959, plaintiff, The Eagle Fire Company of New York, issued to A. A. Tinsley, a used car dealer of Spartanburg, S. C., its "garage liability" policy insuring, in addition to the named insured, "any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

Among the cars on the Tinsley lot, covered by this policy, was a 1955 Dodge sedan which Tinsley had acquired early in 1959. One of Tinsley's employees was Marvin Seay, Sr., whose job was to attend auction and wholesale sales. On Sunday, May 31, 1959, Marvin Seay, Jr., who was a student at Wofford College in Spartanburg and was not in Tinsley's employ, and who, having finished his college examinations, "had a few days off", left Spartanburg in the 1955 Dodge sedan with his girl friend, Shirley Jill Mullins, to drive "to the beach". Somewhere between Columbia (which is 95 miles from Spartanburg) and "the beach", the automobile was involved in an accident and Miss Mullins was injured. She thereupon brought a tort action in Spartanburg County against A. A. Tinsley, Marvin Seay, Jr., Marvin Seay, Sr., and the 1955 Dodge sedan, seeking damages, actual and punitive, for her injuries, in the amount of $35,000.00. The Eagle Fire Company of New York then instituted this action for a declaratory judgment as to whether it was or not obligated to defend the tort action or to pay any judgment that the plaintiff might obtain in that action.

In the case at bar the trial judge submitted to the jury the single question: "Was the 1955 Dodge auto being used on May 31, 1959, with the permission of A. A. Tinsley?" The jury answered in the affirmative; and appellant's exceptions raise the following issues:

1. Was it error to charge, over appellant's objection, the "family purpose doctrine"?

2. Was it error to refuse to charge, as requested by appellant, that if the jury should find that the employment of Marvin Seay, Sr., by Tinsley had been terminated prior to May 31, 1959, then they must find that his possession of the car, if premised upon the relationship of master and servant, was thereby terminated, and that Marvin Seay, Jr., did not thereafter have permission to use the car.

Consideration of these exceptions requires review of the evidence on both sides.

The witnesses for the plaintiff were A. A. Tinsley, Kenneth Horton and G. C. Scruggs; for the defendants, Miss Mullins, Mrs. Marvin Seay, Sr., and Marvin Seay, Jr. Summary of their testimony follows.

*A. A. Tinsley* (direct examination): Marvin Seay, Sr., who had previously worked for Tinsley in 1955 and 1956, last entered his employment about April, 1959. His job was to sell cars at auction and wholesale sales, the latter being made only to dealers in Greenville, Darlington and Leesville, S. C., and Charlotte and Shelby, N. C. Seay did not sell cars on the Tinsley lot; that was done by the retail salesmen. The 1955 Dodge came on the lot in March or April, 1959; it was in good condition except for paint; Tinsley was undecided whether to sell it at wholesale or retail; it was used by on-the-lot salesmen as a demonstrator and for transportation between their homes and the lot. Marvin Seay, Sr., was never given permission to use any of the cars; Marvin Seay, Jr. never worked for Tinsley, and had no permission from him to use any of the cars. About May 20 or 21, 1959, Tinsley personally discharged Marvin Seay, Sr., from his em-

ployment because he had taken two cars to a sale for him, had gotten drunk, and had sold the cars at a loss. On May 31, 1959, Marvin Seay, Sr. was not in Tinsley's employ. About May 25 or 26, 1959, Tinsley discovered that the 1955 Dodge was missing. He thought at first that one of his salesmen had loaned it out, but inquiry revealed that none of them knew where it was; so he and they started looking for it, and Tinsley sent someone to Mr. Seay's house two or three times to see if he had it, because once before Seay had taken this car without Tinsley's permission. One of the salesmen having reported that Seay had the car, Tinsley telephoned him early in June, and Seay admitted that he had it. Tinsley then told him to bring it back or he (Tinsley) would get a warant for him. Next morning Seay came to the lot, did not talk to Tinsley, but told one of the salesmen that the car had been wrecked. When Seay was in Tinsley's employ he did not act in the capacity of a driver, for he had no driver's license. Others would drive the cars to the sales, Seay going with them to "represent" the cars and sell them. Seay had no authority to hire anybody on Tinsley's behalf. The only person other than Tinsley himself who had authority to permit the use of his cars was Kenneth Horton.

On cross-examination: Was not positive, but thought that his employment of Seay for the second time was in February or March, 1959. Was also uncertain as to the exact date when Seay was discharged; it was somewhere between May 15 and 25, 1959, and would be shown on Tinsley's books. It was between June 1 and 10 that he found out about the accident; he did not know when Seay, Sr. had gotten the car. Seay, Sr. had a 1954 Ford car of his own, which he would drive between his home and Tinsley's place of business; sometimes Seay's son would bring him and come back for him, always in the Ford, never in the Dodge. The sales that Seay, Sr. attended were held on Mondays, Tuesdays, Wednesdays, Thursdays and Fridays, and he would attend most of them occasionally missing one in a week. On Sat-

urdays he would hang around Tinsley's car lot, usually leaving about noon. If he had the Dodge car on Easter in 1959, Tinsley didn't know it.

*Kenneth Horton* (direct examination) : Witness is the manager of Tinsley's used car lot and has been in Tinsley's employ continuously since September, 1958. Was authorized to lend cars to salesmen and others for personal use, but never had occasion to give permission to either Marvin Seay, Sr. or Marvin Seay, Jr. to use the 1955 Dodge. Identified the general ledger of the business for 1958-1959, showing entry on May 23, 1959, of payment to Marvin Seay, Sr. of his salary by check of that date, also identified by the witness, and no entries thereafter relating to Marvin Seay, Sr. Had no personal knowledge of Seay's discharge, but knew that the last time he appeared for work was around May 20. Had no personal knowledge as to the whereabouts of the 1955 Dodge during the latter part of May, 1959. First learned early in June that it had been involved in an accident.

On cross-examination, stated that he did not personally see the check of May 23 delivered to Mr. Seay.

*G. C. Scruggs* (direct examination) : Witness is a used car salesman, employed by Tinsley since September, 1958. Was present when Tinsley fired Marvin Seay, Sr. It was on a Tuesday night in May, 1959. Seay was supposed to go to the sale at Leesville that day, but was drunk, and Scruggs went to the sale himself. That night Scruggs came back, and Seay was "up there drunk", and Mr. Tinsley "told him he was definitely fired." Witness could not give the date, but thought it was two or three weeks prior to the accident in which the Dodge car was involved; was positive that it was prior to the date of the accident. After Mr. Tinsley had inquired where the Dodge was, Scruggs and other employees commenced trying to locate it, and later found that it had been wrecked.

On cross-examination : One Saturday morning after the accident Marvin Seay, Sr. came back to the car lot.

*Miss Shirley Jill Mullins* (direct examination) : Witness had from time to time during March, April and May, 1959, "dated" with Marvin Seay, Jr., in the 1955 Dodge car. During the last week in March, 1959, which was the week in which Easter fell, Miss Mullins and her father and Marvin Seay, Jr. and his mother went to Florida in the 1955 Dodge, and were gone about a week. The accident in which Miss Mullins was injured occurred on May 31, 1959, "below Columbia"; she and Marvin Seay, Jr. were in the 1955 Dodge, and he was driving it.

On cross-examination: She and Marvin Seay, Jr., are engaged to be married.

*Mrs. Marvin Seay, Sr.* (direct examination) : Her husband left town the day before the trial, to go north to buy some cars. The 1955 Dodge had been at their home "maybe several days a week" over a period of three months prior to the accident. Her son, Marvin Seay, Jr., had a car of his own, but there was no heater in it, so he didn't use it much during the winter; he used the Dodge car to go to and from school. Marvin, Jr. would drop his father off at Tinsley's car lot and then take the Dodge car on to school. Mr. Seay, Sr. did not usually come home for lunch, but when he did he would come with Marvin, Jr. in the 1955 Dodge "the days he had it." In response to a question by respondents' counsel suggesting that after May 31, 1959, her husband left home each day as he had done before, Mrs. Seay testified that he did so. And then:

"Q. And came back at approximately the same time as before? A. That's right.

"Q. So far as you knew, your husband was off working? A. Well, he would take cars that belonged to different dealers. He was sort of a wholesale broker, and he would take cars that belonged to the dealers and sell them for them.

"Q. Including Mr. Tinsley's? A. Yes."

Mrs. Seay testified, further, that her son would drive her in the 1955 Dodge "just about everywhere" that she couldn't

walk, to do her shopping, etc.; and that on the Friday before Easter she went to Florida in that car. She testified that several times Mr. Tinsley had telephoned to ask where the car was, and on one occasion she told him that her son had it at Wofford College and the key was under the floor mat of the car, and on another occasion she told him that her son had gone to work at the airport after school and had it there.

*Marvin Seay, Jr.* (direct examination) : The witness was twenty-one years old at the time of the trial, in February, 1960. In 1958-1959 he was a student at Wofford College in Spartanburg. His father first brought the 1955 Dodge car home about February or March, 1959, and it was there or being driven by the witness from then until May 31, when it was wrecked. Witness often took his father in that car to Tinsley's place of business, where his father worked. He also drove it to school and to his own work, and would take his mother shopping, or to ride, in it; and he had dates with his girl in it. In the last week of March, 1959, he drove it to Miami, Florida. And he was driving it on May 31 when it was involved in an accident "down below Columbia."

On cross-examination: The occasion for his driving with Miss Mullins on Sunday, May 31, the day of the accident, was that he had just finished his final examinations at Wofford and had a few days off before going to summer school, so they took the opportunity to go to the beach. He had never been employed by Mr. Tinsley, had never asked his permission to use the car, and had never heard Mr. Tinsley say that his father could use it. The only person who ever gave the witness permission to use the car was his father, Marvin Seay, Sr.

On re-direct examination: Witness often drove his father to sales, but never saw the 1955 Dodge at a sale. He would usually see Mr. Tinsley and speak to him when he took his father to work, and Mr. Tinsley saw the car. Witness' home is about three or four miles from Mr. Tinsley's office. When witness was using the car he kept it serviced, but he did

not recall ever having had it serviced at Mr. Tinsley's place of business.

To charge an insurer with liability, under the omnibus clause, for injuries resulting from the operation of a motor vehicle by a person other than the named insured, it must be shown that such operation was with the permission of the named insured. That permission need not be express; it may be implied from the facts and circumstances of the particular situation. Appleman, Insurance Law and Practice, Vol. 7, Sections 4364, 4365; 5A Am. Jur., Automobile Insurance, Sections 93, 94. The rule is well settled; it is in its application that there appears to be a sharp division in judicial thought among the courts of the several states. Annotations: 72 A. L. R. 1375; 5 A. L. R. (2d) 600. Some courts have held that where the named insured has given express permission to another person to use the automobile for a particular purpose, a policy clause such as is here involved affords indemnity to such person while operating the automobile for a purpose and at a place not within the contemplation of the named insured when he delivered the automobile to such person. *Stovall v. New York Indemnity Co.*, 1938, 157 Tenn. 301, 8 S. W. (2d) 473, 72 A. L. R. 1368; Appleman, Insurance Law and Practice, Vol. 7, Section 4366; 5A Am. Jur., Automobile Insurance, Section 99. Others hold, more soundly, we think, that consent should be considered as limited to the purpose for which it was given. *Continental Casualty Co. v. Padgett*, 4 Cir., 219 F. (2d) 133; *Williams v. Travelers Ins. Co.*, 4 Cir., 265 F. (2d) 531; Appleman, Insurance Law and Practice, Vol. 7, Section 4367; 5A Am. Jur., Automobile Insurance, Section 99. These conflicting views were discussed, and our adherence to the latter was declared, in the recent case of *Rakestraw v. Allstate Ins. Co.*, S. C., 119 S. E. (2d) 746.

In the case at bar the operation of the automobile in question by Marvin Seay, Jr. on his drive with Miss Mullins "to the beach" was without the coverage of

appellant's policy unless such operation was with Tinsley's permission, either express or implied. The evidence does not suggest express permission for the use of the car by either Marvin Seay, Sr., or Marvin Seay, Jr.; and we find in it no reasonable basis for the inference of implied permission to either of them for the latter's use of it to drive from Spartanburg to the seacoast on a pleasure trip with his girl friend.

The evidence indicates no relationship between Tinsley and Marvin Seay, Sr. other than that of employer and employee. Although Tinsley denied that Marvin Seay, Sr. had permission to use any of the cars on the lot, the testimony of Mrs. Seay and of Marvin Seay, Jr. was sufficient, we think, to support the inference that Tinsley knew of, did not object to, and therefore impliedly permitted the use of the 1955 Dodge by Marvin Seay, Jr., during his father's employment by Tinsley, to drive his father to and from Tinsley's place of business and to take himself to college and to his work in and near Spartanburg. But there is in the record before us no evidence from which it may, in our opinion, be reasonably inferred that Tinsley consented to or knew of any other use of the car by young Seay.

Over appellant's objection, the trial judge charged the jury that "if Marvin Seay, Sr. had permission, either expressed or implied, to use the 1955 Dodge car for his general family use during the period or at the time that the collision occurred, then I charge you that the defendant Marvin Seay, Jr. would have been using it on the 31st day of May, 1959, with the permission of Tinsley within the meaning of the terms of the policy." For the reason stated above, we think that this charge was not warranted by the evidence and that it was prejudicial.

The evidence is at least susceptible of the inference that whatever implied permission to use the car Marvin Seay, Sr. may have had was incident to his employment by Tinsley. That such employment was terminated prior to May 31, 1959, was unequivocally testified to by

Tinsley and Scruggs and indicated by the records of Tinsley's business. The only attempt to refute that showing was by the testimony of Mrs. Seay, before quoted, to the effect that after May 31, as before, her husband would take cars to sell for dealers, including Tinsley, as a "sort of wholesale broker." Taking this to mean that he was in Tinsley's employ on May 31, the issue of whether he was so employed or not was one of fact for the jury. If he was not so employed at that time, and if his permission to use the car was premised upon such employment, a negative answer to the question propounded to the jury was inevitable. Appellant's request to charge to that effect was proper, and should have been granted.

Reversed and remanded for new trial.

TAYLOR, C. J., and OXNER and MOSS, JJ., concur.

LEWIS, J., disqualified.