AMERICAN HOME ASSURANCE CO. *v.* ERIE
INSURANCE EXCHANGE, ET AL.

[No. 12, September Term, 1968.]

Decided *January 14, 1969.*

The cause was argued before HAMMOND, C. J. and MAR-BURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Thomas A. Farrington,* with whom were *Sasscer, Clagett, Powers & Channing* on the brief, for appellant.

*James T. Wharton,* with whom were *McCarthy & Wharton* on the brief, for appellee Erie Insurance Exchange.

No brief filed for appellee William E. Chaney.

SMITH, J., delivered the opinion of the Court.

The sole question presented in this case is whether appellee (Erie) was obliged to defend Lawrence Wayne Heiston [1] as a result of an accident which took place on June 27, 1965. Heiston was operating the vehicle of William E. Chaney. The pertinent portion of Chaney's policy issued by Erie read:

"PERSONS INSURED
"The following are *Insureds* under Part I:
"(a) with respect to the *owned automobile,*
"(1) the *named insured* and any resident of the same household,
"(2) any other person *using* such automobile with the permission of the *named insured,* provided his actual operation or (if he is not operating) his other actual *use* thereof is within the scope of such permission * * *."
(emphasis in original)

Appellant instituted a declaratory judgment action for the

---

**1.** See *Zurich Insurance Company v. Monarch Insurance Company,* 247 Md. 3, 230 A. 2d 330 (1967) for case involving Heiston's operation of a vehicle on 5/7/64.

purpose of determining whether Erie was obliged to defend Heiston. The trial court ruled in favor of Erie. We agree.

Heiston and Chaney were neighbors, although there was no indication of their having been out together socially.

Chaney and Heiston lived in Suitland, Maryland. Heiston's wife and child were at the home of her parents on Walker Mill Road, District Heights, Maryland. Heiston approached Chaney relative to borrowing Chaney's car for the purpose of going to get his wife and child. Chaney testified as follows:

> "He approached me as far as using my car to go pick up his wife and child and bring them straight home. And I asked him what was wrong with his car and he had told me that the transmission had gone out in his car and he had no transportation to get his wife and children back home. So I asked him approximately how long he would be gone and he said a half hour to forty-five minutes. I said 'All right,' I said, *'On one condition, you only go over and pick your wife up and come straight back and that would be it.'* I asked him if that was all he was going to do and he said, 'Yes.' I said, *'Under those conditions I will lend you the car.'* " (emphasis added)

Heiston did not dispute this testimony of Chaney.

Heiston described the home of his in-laws as being approximately 2½ miles from the Chaney apartment.

Heiston did not know exactly what time he borrowed the automobile, believing it to be about 6:30 P.M. He knew it was daylight. He believed the elapsed time from the time of borrowing to the time of the accident was 20 to 25 minutes.

Chaney said it was approximately 8:30 P.M. when the vehicle was borrowed. Mrs. Chaney thought it was around 9:00 P.M. The trial court found that the accident took place "some two and a half hours after the vehicle had been borrowed."

Heiston instead of proceeding directly to the home of his in-laws picked up a friend and proceeded to get something to eat and to drink at a restaurant on Marlboro Pike in District Heights. He took with him a friend with whom he had been playing cards earlier in the day. At the restaurant they met an-

other friend whom Heiston agreed to take home. That friend lived in North Forrestville, which was not on the route between the Chaney apartment and the home of Heiston's wife's parents.

The accident occurred within a block and a half or two blocks of the restaurant while en route to the home of the friend, which home was a mile and a half from the restaurant. Heiston agreed that he would have been obliged in order to get his wife to retrace his route after leaving the friend at his home, going back by the restaurant.

It is agreed that there is no Maryland case directly on the point here involved. 7 Am. Jur. 2d *Automobile Insurance,* § 119 states:

> "In order to determine whether the coverage of the omnibus clause applies to a given accident, it is first necessary to decide whether the permission or consent of the named insured was granted to the person operating a motor vehicle at the time of the accident; the question then arises whether the vehicle was being used at the time of the accident within the scope of the permission granted, and it may be necessary to determine the effect of deviations from the permitted use. Such a deviation may result from the use of the vehicle for other purposes, the extension of the permission by its delegation to a third person, or the use of the automobile in violation of express instructions.

> "The courts are not agreed as to the legal theory to be applied in determining when a deviation from the purpose and use for which permission is granted will preclude the coverage under the omnibus clause. In this respect, the courts have adopted three different rules: (1) the strict or conversion rule, (2) the liberal rule, and (3) the moderate or 'minor deviation' rule. The courts are divided sharply as to which of these rules, which are discussed in the following sections, should be applied; but it may be noted here, summarily, that under the strict or conversion rule, the courts hold that any deviation, no matter how slight,

will defeat liability under the coverage of the omnibus clause; under the liberal rule, the courts hold that once permission is given, it will extend to any and all uses of the vehicle; and under the moderate or 'minor deviation' rule, the courts hold that a slight deviation does not preclude coverage under the omnibus clause."

See also 7 Appleman, *Insurance Law and Practice,* § 4366-4368 (1962).

We find ourselves in agreement with the statement of Judge Hall in the dissenting opinion in *Matits v. Nationwide Mutual Insurance Company,* 33 N.J. 488, 166 A. 2d 345 (1960) when he said:

"The simple words, perhaps too simple, 'actual use * * * with the permission' of the policyholder or named assured, found in substantially similar form in practically all automobile liability policies issued in every jurisdiction save compulsory insurance states, have engendered probably as much reported litigation as any common contractual phrase. The absence of an express definition of the key words, either legislatively or within the instrument, coupled with the infinite variety of factual situations arising, has resulted in the widest conceivable range of judicial approach, reasoning and result." *Id.* at 498.

One of the leading cases of the so-called "liberal" rule is that of *Stovall v. New York Indem. Company,* 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368 (1928). The policy there brought in as an additional insured "any person * * * legally responsible for the operation thereof, providing such use or operation is with the permission of the named Assured, or, if the named Assured is an individual, with the permission of an adult member of his family other than a chauffeur or domestic servant."

*Matits, supra,* another case under the "liberal" rule, had a clause covering:

"any person or organization legally responsible for the use of the described automobile provided the actual use

was with the permission of the policyholder or such spouse."

In *State Farm Mut. Automobile Ins. Co. v. Cook,* 186 Va. 658, 43 S.E.2d 863, 5 A.L.R.2d 594 (1947) the policy in question covered "any person legally using or operating the same with the permission, express or implied, of such owner."

A full annotation on the subject of the omnibus clause in insurance policies is contained in 72 A.L.R. beginning at page 1375. This is supplemented in 106 A.L.R. 1251 and 126 A.L.R. 544. An annotation is contained in 5 A.L.R.2d beginning at page 600 on the applicability of the omnibus clause to an employee's use. In none of the cases mentioned in these various annotations is there a reference to a policy containing the further modification found in the policy in this case, namely, "within the *scope* of such permission", regardless of the rule adopted. The language in the policy here perhaps reflects further refinement of insurance policies to cover this troublesome point.

In the interpretation of the language of insurance contracts, words are to be given their customary, normal meaning. *Offutt v. Liberty Mut. Ins. Co.,* 251 Md. 261, 247 A. 2d 272 (1968) ; *Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.,* 248 Md. 148, 151, 235 A. 2d 556 (1967) and cases there cited.

There can be no question here but that permission was granted by the insured to Heiston, the person operating the vehicle. The sole question, therefore, is whether the operation of Heiston was within the *scope* of the permission, a question apparently not involved in any of the other cases.

The language of the policy is specific and unambiguous with reference to what persons under what circumstances were afforded coverage. Its language "* * * provided his actual operation * * * is within *the scope of such permission* * * *" is sufficiently explicit to preclude application of the initial permission or liberal rule.

In the view we take of this case, we are not obliged to decide whether we adhere to the strict or conversion rule or the moderate or "minor deviation" rule. It is undisputed that when Heiston was entrusted with the vehicle he was specifically instructed that it was on condition that he only go get his wife

and come straight back. It is undisputed that at the time the accident took place Heiston had not yet picked up his wife and was headed for a destination in an absolutely different direction from the location of the home of his wife's parents, one which would have required him to retrace his route. It is undisputed that Heiston himself believed it would take 30 to 45 minutes to make the round trip from the Heiston home to the home of his wife's parents. The trial court found that the accident took place "some two and a half hours after the vehicle had been borrowed and while they were en route to the Speleous home" (home of Heiston's friend whom he had picked up at the restaurant). Under such circumstances, we hold that while the use of the vehicle was originally "with the permission of the named insured", the "actual operation" thereof was not "within the *scope* of such permission."

*Judgment affirmed, costs to be paid by appellant.*