# INSURANCE COMPANY OF NORTH AMERICA *v.* STATE FARM MUTUAL AUTOMOBILE IN- SURANCE COMPANY ET AL.

[No. 799, September Term, 1976.]

*Decided March 17, 1977.*

The cause was argued before GILBERT, C. J., and MOYLAN and LISS, JJ.

*Richard C. Murray*, with whom was *John H. Zink, III*, on the brief, for appellant.

Submitted on brief by *William A. Hegarty* for appellees.

GILBERT, C. J., delivered the opinion of the Court.

Neither the Court of Appeals nor this Court has heretofore been called upon to decide whether Maryland shall follow the strict or conversion rule, the moderate or minor deviation rule, or the liberal rule, in construing the omnibus clause of automobile insurance policies. The appellate courts of this State have not had that issue put squarely to them so that there has been no need to favor any particular rule over another. This appeal, however, calls upon us to take a stand as to which route we shall hereafter journey in interpreting omnibus clauses.

The factual setting from which the issue arises is as follows: An automobile described in an Insurance Company of North America (INA) policy issued to Janet M. Weiner was involved in an accident with Charlotte S. Bauer. At the time of the impact, Richard L. Miller, Jr., was driving the Weiner vehicle and Mrs. Weiner's son, Melvin Urbanski, was a passenger in the car. Under the INA policy, Urbanski was an "insured" for purposes of bodily injury and property damage liability coverage because he was a resident of the same household as the "Named Insured." [1]

Urbanski's status at the time of the accident was that of passenger. Although the scope of permission granted by Urbanski's mother regarding the use of the car was not explicitly brought out at the hearing, it is clear that Mrs. Weiner had told her son that he was not to let anyone else drive the car, and the hearing judge found as a fact that Urbanski was admonished not to let anyone else drive the vehicle. When asked, "What sanctions would have been imposed on . . . [him] if . . . [he] violated that [restriction as to the use of the car]?", Urbanski replied that he ". . . would have had the car taken away." Urbanski did not obey his mother's caveat, however, and allowed Miller to drive. Mrs. Bauer brought suit against Miller, Jr., for damages arising from the accident.

State Farm Mutual Automobile Insurance Co. (State

---

1. The policy provided in pertinent part that coverage was afforded to "the Named Insured and any resident of the same household. . . ."

Farm) and its insureds, Richard L. Miller and Shirley M. Miller, together with their son, Richard L. Miller, Jr., brought a declaratory judgment proceeding against INA[1] in the Circuit Court for Baltimore County after INA refused to defend the suit against Richard L. Miller, Jr. The declaratory action sought to have INA declared the primary insurer with respect to the Bauer accident.[2] Judge H. Kemp MacDaniel held that INA was the primary insurer.

State Farm urges upon us that INA is the proper primary carrier to defend Miller, Jr. in the Bauer claim. The INA policy provides:

"The following are Insureds under Bodily Injury and Property Damage Liability Coverage:

(a) With respect to the owned automobile,

(1) the Named Insured and any resident of the same household,

(2) any other person using such automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a) (1) or (2) above[.]"

State Farm. argues that the above language — specifically section (2) — places Miller, Jr. in the position of being an Insured of INA, relying on *Maryland Indemnity Insurance Co. v. Kornke*, 21 Md. App. 178, 319 A. 2d 603 (1974).

INA, on the other hand, asserts that the *Kornke* case is inapposite because (1) the policy provisions differ, and (2) coverage depends upon the "total facts," and the facts in the instant case differ from those in *Kornke*.

A comparison of the INA policy provision and the one

---

2. We infer from the record that while this conflict between the two insurance carriers rages, Mrs. Bauer waits in the wings.

involved in *Kornke* reveals that the clauses are indeed different.

| INA Policy | Kornke Policy |
|---|---|
| "... any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission." | "... any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either." 21 Md. App. at 181, 319 A. 2d at 605.[3] |

The omnibus clause in *Kornke* extended coverage to any person "legally responsible" for the use of the automobile, provided that the actual use was with the permission of the named insured. The second permittee in *Kornke* was covered because, as the operator of the vehicle, he was "legally responsible" for the use, although the actual use was by the first permittee. The INA policy in question here does not contain such a phrase. *Ergo,* the second permittee is covered by INA only if using the Weiner automobile with the express or implied permission of the owner. *Federal Insurance Co. v. Allstate Insurance Co.,* 275 Md. 460, 471, 341 A. 2d 399, 406 (1975).

Mrs. Weiner, the Named Insured, expressly forbade her son to allow anyone else to use the car, so express permission is not a factor in this case.

We now consider the presence *vel non* of implied

---

**3.** As Justice Harlan F. Stone stated in Aschenbrenner v. U.S.F. & G. Co., 292 U.S. 80, 84-85, 54 S. Ct. 590, 592, 78 L. Ed. 1137, 1140 (1934),

"The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policy holder who is often without technical training, and who rarely accepts it with a lawyer at his elbow."

permission. 7 Am. Jur. 2d, *Automobile Insurance* § 117 (1963), states:

"The 'general rule' that a permittee may not allow a third party to 'use' the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee, in using the vehicle, is serving some purpose of the original permittee. The courts generally reason that under such circumstances the second permittee is 'operating' the car for the 'use' of the first permittee and that such 'use' is within the coverage of the omnibus clause. While some courts apparently would limit this qualification of the general rule to situations where the named insured has not specifically forbidden. driving by a third person, *it is more generally held that operation by a third person under such circumstances falls within the protection of the omnibus clause even where such operation is specifically forbidden by the named insured.*" (Footnotes omitted.) (Emphasis supplied.)

At the outset, we indicated that the constructions placed upon the automobile insurance policy omnibus clauses fall into three categories: 1) the strict or conversion rule, 2) the moderate or minor deviation rule, and 3) the liberal rule.

## THE STRICT OR CONVERSION RULE

This rule contemplates that the permitted use of the vehicle will not deviate from that contemplated by the parties at the time of the granting of permission. It contains three elements, namely, 1) duration of permitted use must not have expired; 2) the use must occur within the territory specified or contemplated by the parties; and 3) the particular use made of the vehicle at the time of the accident must be that which was specified or contemplated. If any of the three elements is non-existent, the use is unauthorized,

*i.e.,* a conversion to the use of the bailee has occurred and coverage under the policy is not afforded. 7 Am. Jur. 2d, *Automobile Insurance* § 120 (1963). *See also Johnson v. American Automobile Insurance Co.,* 131 Me. 288, 161 A. 496 (1932); *Travelers Insurance Co. v. Greenough,* 88 N. H. 391, 190 A. 129 (1937); *Laroche v. Farm Bureau Mutual Automobile Insurance Co.,* 335 Pa. 478, 7 A. 2d 361 (1939); *Eagle Fire Co. of New York v. Mullins,* 238 S. C. 272, 120 S.E.2d 1 (1961); Annot., 5 A.L.R.2d 626 (1949); Annot., 126 A.L.R. 552 (1940); Annot., 106 A.L.R. 1260 (1937); Annot., 72 A.L.R. 1403 (1931).

## THE MODERATE OR MINOR DEVIATION RULE

As the name suggests, this rule takes an intermediate position between the strict and the liberal views. It modifies the strict rule ". . . to the extent that protection [under the insurance policy] will be afforded the bailee if the use made by him is not a gross violation of the terms of the bailment." 7 Am. Jur. 2d, *Automobile Insurance* § 122 (1963). Such a rule contemplates a case-by-case approach as to whether the omnibus clause will be held to apply.

The extent of the deviation from the permitted use must be evaluated to determine whether ". . . the deviation [from the authorized bailment] was 'minor' or 'material.' " *Id.* Generally, in master-servant relationships, the permitted use is more strictly construed than where the vehicle is loaned for social purposes and the borrower is a relative or friend. *Id. See also Jordan v. Shelby Mut. Plate Glass & Casualty Co.,* 142 F. 2d 52 (4th Cir. 1944); *Winterton v. Van Zandt,* 351 S.W.2d 696 (Mo. 1961); *Jernigan v. State Farm Mutual Automobile Insurance Co.,* 16 N. C. App. 46, 190 S.E.2d 866 (1972); *Lloyds America v. Tinkelpaugh,* 184 Okla. 413, 88 P. 2d 356 (1939); *Transamerica Insurance Co. v. Signal Insurance Co.,* 261 Or. 390, 494 P. 2d 885 (1972).

## THE LIBERAL RULE

This rule provides that if the original taking is with the insured's consent every subsequent act, short of theft and the like, is deemed to be within the scope of the permission, irrespective of whether the use was contemplated by the

bailor. The only essential ingredient is the permission in the first instance. 7 Am. Jur. 2d, *Automobile Insurance* § 121 (1963); *Jefson v. London Guarantee and Accident Co.*, 293 Ill. App. 97, 11 N.E.2d 993 (1937); *Arndt v. Davis*, 183 Neb. 726, 163 N.W.2d 886 (1969); *United States Fidelity and Guaranty Co. v. Fisher*, 88 Nev. 155, 94 P. 2d 549 (1972); *Small v. Schuncke*, 42 N.J. 407, 201 A. 2d 56 (1964); *Matits v. Nationwide Mutual Insurance Co.*, 33 N. J. 488, 166 A. 2d 345 (1960); *Stovall v. New York Indemnity Co.*, 157 Tenn. 301, 8 S.W.2d 473 (1928).

It seems to us that the liberal rule is particularly applicable when the General Assembly has adopted motor vehicle legislation patently designed to assure that the owner of a motor vehicle bear financial responsibility to those innocent victims who are injured as a result of negligence. *Metz v. Universal Underwriters Insurance Co.*, 109 Cal. Rptr. 698, 513 P. 2d 922 (1973); *United States Fidelity and Guaranty Co. v. Fisher, supra; Matits v. Nationwide Mutual Insurance Co., supra.* Maryland has enacted such legislation. Md. Ann. Code art. 66½, Subtitle 7,[4] § 7-101 provides in pertinent part:

> "(a) *Every owner of a motor vehicle required to be registered in this State shall maintain the security required by this section with respect to each such motor vehicle owned by him* throughout the period the registration is in effect. No certificate of registration shall be issued or transferred to an owner by the Administrator unless the owner or prospective owner produces satisfactory evidence that such security is in effect." (Emphasis supplied.)

A motor vehicle, *per se*, does no wrong to anyone; it is the operator of the vehicle who sets in motion the chain of events causing injury or damage. Obviously, the legislature,

---

4. Section 7-103 thereof makes it a misdemeanor to operate a motor vehicle that is not covered by either a policy of insurance in the specified amount or other form of security approved by the Administrator of Motor Vehicles.

by requiring that the vehicle be insured by the owner, means the insurance coverage to be afforded to all who drive the vehicle, in the absence of theft and the like. We think it clear that the General Assembly of Maryland intended, by the enactment of § 7-101 (a) that the courts of this State should follow the liberal rule rather than the more restrictive ones.

INA urges that *American Home Assurance Co. v. Erie Insurance Exchange*, 252 Md. 116, 248 A. 2d 887 (1969) is dispositive of this appeal. We do not share that view. In that case, the Court considered an omnibus clause very much akin to that in the instant case and concluded that under the circumstances of that particular case the " 'actual operation' . . . was not 'within the *scope* of . . . [the] permission.' " 252 Md. at 122, 248 A. 2d at 890.

*American Home Assurance Co. v. Erie Insurance Exchange, supra,* was decided by the Court prior to the enactment of Maryland's version of a compulsory insurance law. In the light of that law, we believe *American Home Assurance Co. v. Erie Insurance Exchange* to be no longer apposite.

We hold that whenever a person is given permission by an insured owner to operate a motor vehicle, any subsequent use of the vehicle, by the permittee, while the vehicle remains in the possession of the permittee, is a permitted use and thus within the coverage provided by the omnibus clause of the owner's insurance policy.

Judge MacDaniel was correct in declaring INA to be the primary insurer.

*Judgment affirmed.*
*Costs to be paid by appellant.*