## NATIONAL GRANGE MUTUAL INSURANCE COMPANY v. MICHAEL JAMES PINKNEY ET AL.

[No. 70, September Term, 1978.]

*Decided April 10, 1979.*

*Louis G. Close, Jr.,* for appellant.

*William A. Franch,* with whom were *Ronald H. Jarashow* and *Goldsborough, Franch & Collett* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

In this case we shall hold that it is not permissible under Maryland law to apply the so-called "liberal" or "hell or high water" rule to the construction of an omnibus clause in a motor vehicle liability policy.

The parties have entered into an agreed statement of facts pursuant to Maryland Rule 828 g. It reflects that petitioner,

National Grange Mutual Insurance Company (National Grange), issued an automobile liability insurance policy on June 12, 1975, covering a Ford van. The parties afforded protection by the policy in addition to the named insured included "[a]ny other person while using [such] automobile with the permission of the named insured, provided his actual operation [was] within the scope of such permission . . . ." An accident took place at 3:22 a.m. while the van was being operated, by one of the respondents, Michael James Pinkney (Pinkney), an employee of the named insured. Seven passengers were in the cargo area of the van at that time. The president of the named insured said he gave Pinkney permission only to take the vehicle home at the end of the work day and to return with it at the beginning of the next work day. He claimed Pinkney was told that the vehicle was for use only in going to and from work. It was not to be used for any personal reason. Moreover, he said he told Pinkney there was to be no more than one passenger with him at any given time because the vehicle had only one passenger seat. On the other hand, Pinkney stated he was given permission to use the van for any purpose, including any personal reason, that he might use it as if it were his own. His work day ended at approximately 5:00 p.m. It was established by deposition that on the night previous to the accident Pinkney used the vehicle as a means of transportation for himself and various passengers who wished to bowl. He consumed a considerable quantity of alcoholic beverages on the night or morning in question prior to the accident.

National Grange instituted an action for declaratory judgment for the purpose of determining whether the omnibus clause was applicable to Pinkney's operation of the vehicle at the time of the accident. Pinkney and the Unsatisfied Claim and Judgment Fund Board, respondents here, were parties defendant to the proceeding, together with all others who could possibly be affected by such a determination. The trial judge entered a summary judgment against National Grange, holding that it was bound under the clause in question. He followed the reasoning of the Court of Special Appeals in *Insurance Co. of N. Am. v. State Farm,* 35

Md. App. 402, 370 A. 2d 566 (1977), "adopt[ing] the 'liberal rule' of construction in regard to omnibus clauses in policies of insurance on motor vehicles." As he saw it, there was no triable issue of fact because the initial use of the vehicle was permissive and all of the disputed facts "relate[d] to whether the use was within the scope of the permission," which he found to be "no longer material" under the "liberal rule."

The Court of Special Appeals did, indeed, adopt the so-called "liberal" rule in *Insurance Co. of N. Am. v. State Farm, supra.* We reversed in *Insurance Co. of N. Amer. v. State Farm,* 281 Md. 381, 378 A. 2d 1344 (1977). In so doing we made two points. (1) The clause in question not only was virtually identical to that before the Court in *Cohen v. Am. Home Assurance Co.,* 255 Md. 334, 258 A. 2d 225 (1969), and *Goodwin v. Home Indemnity Co.,* 255 Md. 364, 258 A. 2d 220 (1969) (both decided the same day), but also the facts there were closely analogous to the facts in the latter cases, in each of which we had held coverage was not afforded the operator of the vehicle. Hence, we found *Cohen* and *Goodwin* to be "controlling [t]here." (2) The Court of Special Appeals relied in part for its decision upon the adoption by the General Assembly of what was at the time of its decision Maryland Code (1957, 1972 Repl. Vol., 1976 Cum. Supp.) Art. 66½, § 7-101 (a) (now Code (1977) § 17-104 (a), Transportation Article) making it mandatory that every owner of a motor vehicle have liability insurance. Since the accident in question took place on September 6, 1972, and the statute did not become effective until January 1, 1973, we said, "[T]hat statute could have no effect in interpreting the policy provision . . . before the Court." This last statement has been seized upon by the respondents here as an indication that we might otherwise have agreed with the Court of Special Appeals. Ordinarily, we do not give advisory opinions. Because the accident in that case took place prior to the effective date of the new statute, we had no need to decide whether the new statute mandated a change in our prior holdings relative to the omnibus clause. We intended the statement to go no further than to indicate that the Court of Special Appeals had rested its opinion upon an improper

foundation, a change of law which was not applicable in that case.

Decisions relative to the interpretation and application of omnibus clauses have been placed by the textwriters into three categories. One of these is referred to as the "liberal" or the "hell or high water" rule. Of it, 6C J. A. Appleman and J. Appleman, *Insurance Law and Practice* § 4367 (Buckley ed. 1979), declares:

> A number of states have apparently felt that even an ordinary automobile liability insurance contract is as much for the benefit of members of the public as for the benefit of the named or additional insured. Therefore, upon an injury occurring they have felt it undesirable to permit litigation as to the use made of the vehicle, the scope of permission, purposes of the bailment, and the like. These states have arbitrarily adopted a doctrine that if the vehicle was originally entrusted by the named insured, or one having proper authority to give permission, to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated. This rule is also, albeit less colorfully, known as the initial permission rule. It should be noted however, that a minority of jurisdictions have rejected the rule. [*Id.* at 196-99 (footnotes omitted).]

Of the second or "conversion" rule Appleman states:

> The majority of jurisdictions adhere to the conversion rule, namely, that where the use made of the automobile by the bailee sufficiently exceeds the scope of the permission given so as to make the bailee liable to the insured in an action for conversion such use is not covered. This means, fundamentally, that the vehicle must be used for a purpose reasonably within the scope of the permission granted, within the time limits imposed or

contemplated by the parties, and operated within geographical limits so contemplated. Nor is this an unreasonable rule. It would be odd, rather, to say that the automobile is operated with the permission or consent of the insured in order to impose liability on the insurer, and yet to say that such use is not with the permission of the named insured if he should sue the bailee for conversion. Of course, this does not mean that every immaterial deviation would automatically cut off the policy protection. It merely declares that such use must be reasonably within the intention of the parties at the time consent is given, or a use to which the insured would have consented had he known of it. [*Id.* at 204-05 (footnote omitted).]

Of the third or "minor deviation" rule the same authors state:

A third rule adopted by various courts may be termed, for the sake of brevity, the *rule of minor deviation.* Under that doctrine, if the use made by the bailee is not a gross violation of the terms of the bailment, even though it may have amounted to a deviation, protection is still afforded such additional insured. Thus, if the automobile is being used upon the route contemplated at a time when permission was in force and effect, it is immaterial that the purpose of such use was different than that for which consent had been given by the named insured. And a slight deviation will not change the permissive character of the use. [*Id.* at 216-17 (footnote omitted).]

12 G. Couch, *Cyclopedia of Insurance Law* §§ 45:463, 464, 468, 470 (2d ed. R. Anderson 1964) is in accord with the position taken by Appleman. In referring to what it calls the "moderate or minor deviation rule," the latter work states, "Increasingly, the courts have taken an intermediate position between the two more extreme rules . . . ." *Id.* at 462.

This Court has had occasion to consider the omnibus clause in past litigation in a number of cases in addition to *Insurance*

*Co. of N. Amer. v. State Farm, supra; Goodwin v. Home Indemnity Co., supra;* and *Cohen v. Am. Home Assurance Co., supra. See, e.g., Federal Ins. Co. v. Allstate Ins. Co.,* 275 Md. 460, 341 A. 2d 399 (1975); *Keystone Ins. v. Fidelity & Cas.,* 256 Md. 423, 260 A. 2d 275 (1970); *Unsat. C. & J. Fund v. U.S.F. & G.,* 256 Md. 412, 260 A. 2d 279 (1970); *Am. Home Assur. Co. v. Erie Ins.,* 252 Md. 116, 248 A. 2d 887 (1969); *Melvin v. American Auto Ins. Co.,* 232 Md. 476, 194 A. 2d 269 (1963); and *Selected Risks v. Miller,* 227 Md. 174, 175 A. 2d 584 (1961).

As our discussion in *Insurance Co. of N. Amer.* indicates, we have not adopted the so-called liberal rule. We have specifically held persons not covered by an omnibus clause using language similar to that in the case at bar because their actual operation of the motor vehicle in question was not within the scope of the permission granted to them. Obviously, we would have held to the contrary had we adopted the liberal rule.

We turn to an examination of the statutes applicable to automobile liability insurance because it is argued that the General Assembly has changed the public policy of this State relative to insurance. These are found in Code (1977) Transportation Article and Code (1957) Art. 48A. Section 17-101 of the Transportation Article states that " 'required security' means security in the form and providing for the minimum benefits required under [Title 17 of the Transportation Article] or any other provisions of the Maryland Vehicle Law." Exemptions in no way applicable to this proceeding are provided in § 17-102. The required form of security is specified in § 17-103 (a) (1) to be "a vehicle liability insurance policy written by an insurer authorized to write these policies in this State," with provision made in § 17-103 (a) (2) for the Motor Vehicle Administration to accept "another form of security in place of a vehicle liability insurance policy if it finds that the other form of security adequately provides the benefits required by subsection (b) of [§ 17-103]." The required minimum benefits set forth in § 17-103 (b) are as follows:

(b) . . . The security required under this subtitle shall provide for at least:

(1) The payment of claims for bodily injury or death arising from an accident of up to $20,000 for any one person and up to $40,000 for any two or more persons, in addition to interest and costs;

(2) The payment of claims for property of others damaged or destroyed in an accident of up to $5,000, in addition to interest and costs;

(3) The benefits required under Article 48A, § 539 of the Code as to basic required primary coverage; and

(4) The benefits required under Article 48A, § 541 of the Code as to required additional coverage.

Evidence of security is required by § 17-104 as a prerequisite to registration of a motor vehicle. Provision for the lapse or termination of required security is made by § 17-106. Under § 17-107 a person "who has knowledge that a motor vehicle is not covered by the required security" is forbidden to drive it or, if he is the owner, to "knowingly permit another person to drive it."

Code (1957, 1972 Repl. Vol., 1978 Cum. Supp.) Art. 48A, §§ 538-546 were originally enacted by Chapter 73 of the Acts of 1972 under what was there referred to as a "new subtitle '35. Motor Vehicle Casualty Insurance — Required Primary Coverage' . . . ." Chief Judge Murphy summarized most of these provisions for the Court in *Travelers Ins. Co. v. Benton,* 278 Md. 542, 365 A. 2d 1000 (1976):

Section 539 provides that no policy of motor vehicle liability insurance may be issued after January 1, 1973 unless it affords minimum medical, hospital, disability and loss of income benefits up to $2,500 (the PIP coverage) for the named insured and for other designated individuals injured as a result of a motor vehicle accident. Section 540 provides that the benefits required under § 539 shall be payable

without regard to fault. Section 543 entitled "Duplication of benefits; coordination of benefits" provides in subsection (a) that no person shall recover PIP benefits from more than one motor vehicle liability policy or insurer "on either a duplicative or supplemental basis." Section 543 (b) provides, with respect to a person injured in an accident while occupying a motor vehicle for which PIP coverage is "in effect," that the PIP benefits "shall be payable by the insurer of the motor vehicle." Section 543 (c) provides, with respect to a person insured under a policy providing PIP coverage who is injured in an accident while occupying a motor vehicle for which such coverage "is not in effect," that the PIP benefits "shall be payable by the injured party's insurer providing such coverage." [*Id.* at 543.]

*Accord, Government Employees Ins. v. Harvey,* 278 Md. 548, 549, 366 A. 2d 13 (1976). To this we add that § 541 (a) provides that nothing in that subtitle shall affect or limit "the provisions of Title 17 of the Transportation Article" and all motor vehicle liability policies issued, sold or delivered in Maryland are to "provide the minimum liability coverage specified [in Title 17]." In addition, every policy of motor vehicle liability insurance issued subsequent to July 1, 1975, is required by § 541 (c) to contain "coverage, in at least the amounts required under Title 17 . . . , for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle . . . ." Because § 17-103 (b) of the Transportation Article specifies that the required minimum benefits include those "required under Article 48A, § 541 . . . as to required additional coverage," we point out that the requirement of "minimum liability coverage [as] specified [in Title 17]" and the uninsured motorist endorsement are the only coverages mandated by § 541.

Provision is made in Code (1957, 1972 Repl. Vol., 1978 Cum.

Supp.) Art. 48A, § 243H for payment from the Maryland Automobile Insurance Fund on claims arising after January 1, 1973, to "a qualified person" in instances where such individual has a valid claim for death or personal injury or for damage to property in excess of $100 "caused by an uninsured operator" and in a number of other instances, such as where the identity of the motor vehicle and of the operator and the owner cannot be ascertained, where it is established that at the time of the accident the vehicle was in the possession of some person other than the owner without the owner's consent and the identity of that person cannot be ascertained, and where the accident is caused by an operator or owner whose whereabouts cannot be determined. Under § 243L (e) a "qualified person" includes not only a resident of this State or the owner of a motor vehicle registered in this State, but "a resident of another state, territory, or federal district of the United States or province of the Dominion of Canada, or foreign country, in which recourse is afforded to residents of this State, of substantially similar character to that provided for by th[at] subtitle . . . ."

Our citizens are further protected by the Maryland Insurance Guaranty Association, for which provision is made in Code (1957, 1972 Repl. Vol., 1978 Cum. Supp.) Art. 48A, §§ 504-518, inclusive. It is applicable to "covered claims" as there defined. To come within this category certain tests are set forth including the fact that such claim must "arise out of the insurance policy contracts of the insolvent insurer issued to residents of this State or which are payable to residents of this State on behalf of insureds of the insolvent insurer . . . ." These sections were enacted by Chapter 651 of the Acts of 1975 and replace the former Motor Vehicle Security Fund which provided like coverage relative to insolvent motor vehicle liability insurance companies. The latter fund was created after the collapse of such a company. It made substantial disbursements after some other companies become insolvent.

We note that neither the Maryland Automobile Insurance Fund nor the Maryland Insurance Guaranty Association is maintained by the State. The Maryland Automobile Insurance

Fund writes insurance for those individuals who may not otherwise be able to obtain insurance. Provision is made by Art. 48A, § 243A (c) for it to estimate any insufficiency in the fund and to certify it to the Industry Automobile Insurance Association, created under § 243M. Under § 243M (d) it assesses its members for such insufficiency. Likewise, Art. 48A, § 508 (a) (3) provides in pertinent part that the Maryland Insurance Guaranty Association shall "[a]llocate claims paid and expenses incurred among the four [authorized] accounts [of the Association] separately, and assess member insurers separately for each account in amounts necessary to pay the obligation of the Association under [the] paragraph [relative to insolvency] subsequent to an insolvency, the expenses of handling covered claims subsequent to an insolvency, the cost of examinations under § 513 and other expenses authorized by [the] subtitle [relative to the Maryland Insurance Guaranty Association]."

It will be seen that the public policy of this State as enunciated by the General Assembly is that there should be liability coverage as to personal injury of $20,000 for any one person and $40,000 for any accident and that the coverage for property damage should be $5,000. It will further be seen that under the combination of required uninsured motorist endorsements in policies issued in Maryland and the provision for payment from the Maryland Automobile Insurance Fund, the only persons injured in Maryland not afforded protection equal to the minimum which would be provided under an omnibus clause are those persons from places not having the equivalent of our Maryland Automobile Insurance Fund and a few people disqualified in such instances as that under Art. 48A, § 243H (a) (1) (i) where a claimant might have been riding in an uninsured motor vehicle owned by him. This combination seems to us to eliminate virtually all of the policy reasons which might be put forward for adoption of the "liberal" rule.

It should be specifically noted that there is no provision in any Maryland statute to which we have been referred, or which we have found in our research, which requires an omnibus clause to appear in any motor vehicle liability

insurance policy. Although it may be interesting to scholars to attempt to lump decisions on clauses such as that here before the Court into categories such as "liberal," "conversion," or "minor deviation," an insurance policy is a contract and it is under terms of contract law of the State that it should be interpreted. The holdings of this Court relative to the interpretation of insurance contracts were well summarized for the Court by Judge Singley in *Gov't Employees Insur. v. DeJames,* 256 Md. 717, 261 A. 2d 747 (1970):

> It is well settled that in interpreting insurance contracts, words are to be given their customary and normal meaning. *State Farm Mut. Auto Ins. Co. v. Treas,* 254 Md. 615, 255 A. 2d 296 (1969); *American Home Assurance Co. v. Erie Ins. Exchange,* 252 Md. 116, 248 A. 2d 887 (1969); *Offutt v. Liberty Mut. Ins. Co.,* 251 Md. 262, 247 A. 2d 272 (1968); *Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.,* 248 Md. 148, 151, 235 A. 2d 556 (1967), and cases there cited. Absent ambiguity the construction of the contract remains within the province of the court and Maryland has not adopted the rule, followed in many jurisdictions, that an insurance policy is to be most strongly construed against the insurer, *American Cas. Co. v. Aetna Cas. & Surety Co.,* 251 Md. 677, 248 A. 2d 487 (1968); *Mateer v. Reliance Ins. Co.,* 247 Md. 643, 233 A. 2d 797 (1967); *Ebert v. Millers Mut. Fire Ins. Co.,* 220 Md. 602, 155 A. 2d 484 (1959). If the language of an insurance contract is ambiguous, however, construction is for the jury, *Ebert v. Millers Mut. Fire Ins. Co., supra,* 220 Md. at 610; *Eagle Star & British Dominions Ins. Co. v. Fleischman,* 175 Md. 433, 2 A. 2d 424 (1938); 22 Appleman, *Insurance Law and Practice* § 12853 (1947) at 7, and the ambiguity is to be resolved against the company which prepared the policy and in favor of the insured, *American Cas. Co. v. Aetna Cas. & Surety Co., supra,* 251 Md. at 684; *Allstate Ins. Co. v. Humphrey,* 246 Md. 492, 496, 229 A. 2d 70 (1967). [*Id.* at 720.]

*Accord, Aragona v. St. Paul Fire & Mar. Ins.,* 281 Md. 371, 375, 378 A. 2d 1346 (1977); *Government Employees Ins. v. Harvey,* 278 Md. 548, 553, 366 A. 2d 13 (1976); *Federal Ins. Co. v. Allstate Ins. Co.,* 275 Md. 460, 473, 341 A. 2d 399 (1975); *Neuman v. Travelers Indemnity Co.,* 271 Md. 636, 641, 319 A. 2d 522 (1974); and *C & H Plumbing v. Employers Mut.,* 264 Md. 510, 511-12, 287 A. 2d 238 (1972). We point out that Maryland differs from some of the states such as New Jersey which have adopted the "liberal" rule since there an insurance policy is to be most strongly construed against the insurer, which is not the rule in Maryland. Moreover, as was pointed out in *Weissberg Corp. v. N.Y. UW Insur.,* 260 Md. 417, 429, 272 A. 2d 366 (1971), citing *Offutt v. Liberty Mut. Ins. Co.,* 251 Md. 262, 270, 247 A. 2d 272 (1968), we may not make a new contract under guise of construction.

We find nothing in the enactments of the General Assembly relative to insurance to indicate that we are expected as a matter of public policy to follow the so-called "liberal" rule relative to interpretation of omnibus clauses. We find no mandate which obliges us to depart from either our prior opinions on the subject of omnibus clauses or the prior authorities in this State relative to the interpretation of insurance contracts. It should be specifically noted that although the clause in the contract now before the Court is similar to that before us in *Insurance Co. of N. Amer. v. State Farm, supra,* 281 Md. 381; *Goodwin v. Home Indemnity Co., supra,* 255 Md. 364; and *Cohen v. Am. Home Assurance Co., supra,* 255 Md. 334, it is not identical to *all* of the omnibus clauses which have appeared in cases before us. We note specifically that all omnibus clauses do not contain the same language. Because these clauses are part of contracts, it follows that they must be interpreted pursuant to their terms on a contract by contract or case by case basis, and not by sweeping language saying that regardless of the exact provisions of the contract we shall interpret all similar, but not identical, contracts alike. Here the policy provisions specify in plain, unambiguous, easily understandable language that for coverage to exist Pinkney not only was required to have "the permission of the named insured [for

use of the van, but] his actual operation [must have been] within the scope of such permission . . . ."

Pinkney in this case said he had permission to use the vehicle in question as if it were his own for any reason, including personal reasons. The president of his employer, the named insured, stated his specific instructions to Pinkney were that he was to use the vehicle only in going to and from work, that no personal use was permitted, and he was to have no more than one passenger in it. It follows, therefore, that there is a disputed issue of fact here which must be resolved by trial. If the trier of fact concludes after listening to all of the testimony that the actual operation of the vehicle was within the scope of the permission granted, then National Grange will be obliged to defend. Obviously, if the trier of fact believes that such actual operation was not within the scope of the permission granted, then National Grange is not obligated under the omnibus clause.

> *Judgment of the Circuit Court for Anne Arundel County reversed and case remanded to that court for trial; appellees to pay the costs.*