585 A.2d 196

**Alvin Morris NEALE et al.**

v.

**Fletcher L. WRIGHT et al.**

**No. 50, Sept. Term, 1989.**

Court of Appeals of Maryland.

Feb. 5, 1991.

Benjamin S. Vaughan (Armstrong, Donohue & Ceppos, Chartered, on brief), Rockville, for petitioner.

Charles R. Claxton, Washington, D.C. (Mary S. Akerley, Sasscer, Clagett, Channing & Bucher, Upper Marlboro, on brief), for respondent.

Argued before MURPHY, C.J., ELDRIDGE, COLE *, RODOWSKY, McAULIFFE and ADKINS **, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired) Specially Assigned.

ELDRIDGE, Judge.

In this case a husband and wife together purchased an automobile at a time when the husband was excluded from the liability insurance policy on the vehicle under the named driver exclusion provision of the Insurance Code, Maryland Code (1957, 1986 Repl.Vol., 1990 Cum.Supp.), Art. 48A, § 240C–1. The principal issue is whether the joint ownership under these circumstances constituted "negligent entrustment" by the wife.

The case was decided in the trial court on the wife's motion for summary judgment. The relevant facts, for purposes of summary judgment, were set forth in the pleadings and depositions.

Sometime before 1981, Alvin Morris Neale was issued an automobile insurance policy by Nationwide Mutual Insurance Company covering the Neales' family car. In 1981, Nationwide offered to exclude Mr. Neale from coverage under the named driver exclusion provision of the Insurance Code, Art. 48A, § 240C–1, in lieu of not renewing the

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

policy.[1]  Mr. Neale signed the offer, and thereafter the

---

1. At the time Mr. Neale was excluded from the Nationwide policy, § 240C–1 provided as follows (Code (1957, 1979 Repl.Vol.), Art. 48A, § 240C–1):

"**§ 240C–1.  Exclusion of named driver.**

(a) In any case where an insurer is authorized under this article to cancel or nonrenew or increase the premiums on an automobile liability insurance policy under which more than one person is insured because of the claim experience or driving record of one or more but less than all of the persons insured under the policy, the insurer shall in lieu of cancellation, nonrenewal, or premium increase offer to continue or renew the insurance, but to exclude from coverage, by name, the person or persons whose claim experience or driving record would have justified the cancellation or nonrenewal. The premiums charged on any such policy excluding a named driver or drivers shall not reflect the claims experience or driving record of the excluded named driver or drivers.

(b) With respect to any person excluded from coverage under this section, the policy may provide that the insurer shall not be liable for damages, losses, or claims arising out of the operation or use of the insured motor vehicle, whether or not such operation or use was with the express or implied permission of a person insured under the policy."

Chapter 698 of the Acts of 1985 amended § 240C–1 to provide in part as follows:

"**§ 240C–1.  Exclusion of named driver.**

(a)(1) In any case where an insurer is authorized ... to cancel or nonrenew or increase the premiums on an automobile liability insurance policy issued ... to any resident of a household, under which more than 1 person is insured because of the claim experience or driving record of 1 or more ... persons insured under the policy, the insurer shall in lieu of cancellation, nonrenewal, or premium increase offer to continue or renew the insurance, but to exclude all coverage when a motor vehicle is operated by the specifically named excluded person or persons whose claim experience or driving record would have justified the cancellation or nonrenewal. The policy may be endorsed to specifically exclude all coverage for any of the following when the named excluded driver is operating the motor vehicle(s) covered under the policy whether or not that operation or use was with the express or implied permission of a person insured under the policy:

(i) The excluded operator or user;

(ii) The vehicle owner;

(iii) Family members residing in the household of the excluded operator or user or vehicle owner; and

Nationwide policy continued to cover the Neales' family car except when "the vehicle [was] operated" by Mr. Neale.

In 1983, two years after Mr. Neale was excluded from the Nationwide policy, Mr. and Mrs. Neale traded in the family car, a 1977 Chevrolet Nova which they co-owned, for a new Mercedes–Benz. Like the Nova, the Mercedes–Benz was purchased jointly by Mr. and Mrs. Neale and was titled in both names. Mrs. Neale had used the Nova, and continued to use the Mercedes–Benz, to go to and from her job as a teacher at a senior high school. Mr. Neale also drove the Mercedes–Benz occasionally even though he was excluded from the automobile insurance. Mr. Neale used at least one other vehicle, a truck owned by Mr. Neale's construction company.

On August 25, 1985, the Reverend Fletcher Wright, his wife and two children, were involved in a head-on collision on Allentown Road in Prince George's County with Mr. Neale who was driving the Mercedes–Benz. Mrs. Neale was not in the car at the time of the accident.

The Wrights instituted the present action in the Circuit Court for Prince George's County, initially naming only Mr. Neale as defendant, and alleging that his negligent driving caused their injuries. Because Mr. Neale was uninsured, the Wrights, sometime after this action was filed, collected uninsured motorist benefits from their own insurer, Allstate Insurance Company, under the uninsured motorist endorsement of their policy. Allstate was permitted to intervene in light of the approximately $90,000 it had paid to the

---

(iv) Any other person, except for the coverage required by sections 539 and 541(c)(2) of the article if such coverage is not available under any other automobile policy."

&ast; &ast; &ast; &ast; &ast; &ast;

With regard to the purpose of the 1985 amendments, see the Department of Legislative Reference's file on House Bill 1360 of the 1985 session of the General Assembly.

It does not appear from the record that Nationwide changed the language in its named-driver exclusion endorsement to the Neales' automobile insurance policy in light of the changes in the statutory language.

Wrights. Thereafter, Allstate and the Wrights amended their complaints to name Mrs. Neale as a defendant on a theory of negligent entrustment and Neale Construction Company on a theory of respondeat superior liability.

In May 1988, Mrs. Neale moved for summary judgment, taking the position that she, as a co-owner, had no power to prevent her husband, the other co-owner, from operating the jointly owned automobile. As previously indicated, the circuit court granted Mrs. Neale's motion and, under Maryland Rule 2-602, finalized the judgment in her favor so that an appeal could be taken.

The Wrights and Allstate appealed to the Court of Special Appeals, arguing that Mrs. Neale negligently entrusted the car to her husband in 1983 because she allowed him to become an owner when he was excluded from the Nationwide automobile insurance policy. The Wrights and Allstate alternatively argued that Mrs. Neale entrusted the car to Mr. Neale at the time of the accident because she failed to prevent him from using it.

■ The Court of Special Appeals reversed and remanded the case against Mrs. Neale for trial. The intermediate appellate court held that a jury could reasonably conclude that Mrs. Neale "supplied" the Mercedes–Benz to her husband at the time of purchasing the automobile "by joining with him in obtaining registration when his lack of insurance precluded him from doing so in his own name." *Wright v. Neale*, 79 Md.App. 20, 28, 555 A.2d 518, 522 (1989). The appellate court further stated that Mrs. Neale's liability "flows from her participation in making [Mr. Neale] an owner with knowledge of his driving habits." *Ibid.* Thereafter, this Court granted Mrs. Neale's petition for a writ of certiorari. We shall reverse the decision of the Court of Special Appeals.

■ This Court first dealt with the cause of action for negligent entrustment in *Rounds v. Phillips*, 166 Md. 151, 170 A. 532 (1934). The controlling principle set forth in *Rounds*, 166 Md. at 160–161, 170 A. at 535, quoting with

approval from the *Restatement of Torts* § 390 (1934), is as follows:

> " 'One who supplies directly or through a third person a chattel for the use of another whom the supplier knows, or from facts known to him should know, to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them.' "

*See Restatement (Second) of Torts* § 390 (1965). The cause of action for negligent entrustment does not rest on a theory of vicarious liability; it may be maintained against a person who, because he or she entrusts personal property to a known "reckless" individual, is directly negligent. *See also Rounds, supra,* 166 Md. at 160, 170 A. at 535; *Kahlenberg v. Goldstein,* 290 Md. 477, 489–90, 431 A.2d 76, 83–84 (1981).

■ The cause of action may lie against one who has the power to permit or prohibit the use of the property entrusted. *Rounds, supra,* 166 Md. at 168, 170 A. at 538. In *Rounds,* this court held that a cause of action for negligent entrustment existed against a father for entrusting an automobile to his son even though the vehicle was titled in the mother's name. The reason for so holding was that "[t]he son was a minor, and the father, as the controlling head of the family, had the authority and power to permit the use by the son of the mother's automobile, or to prohibit it." *Rounds, supra,* 166 Md. at 167, 170 A. at 538. The son, it was alleged, negligently caused the death of another motorist while driving the mother's car.

This Court recently addressed the cause of action for negligent entrustment in *Kahlenberg v. Goldstein, supra,* 290 Md. 477, 431 A.2d 76. We there recognized that liability could extend to the situation "where a gift of an automobile is made to a member of the donor's immediate family." 290 Md. at 489, 431 A.2d at 83. In *Kahlenberg,* a jury verdict was upheld against a father who had purchased a

car for his twenty-year old son who, soon after the car was purchased, was involved in an accident causing the plaintiff's injuries.

In the case before us, the Court of Special Appeals extended the concept of "one who supplies a chattel" to include someone who co-purchases an automobile with his or her spouse who is a named excluded driver. In our view, the intermediate appellate court erroneously held that a jury could reasonably conclude that Mrs. Neale "supplied" the family car to her husband in 1983 by purchasing the car with him as co-owner. The position of the respondents and the Court of Special Appeals shows a misunderstanding of the named driver exclusion provision of the Insurance Code, Art. 48A, § 240C–1, as well as the motor vehicle registration provisions of the Vehicle Laws, Code (1977, 1987 Repl. Vol., 1990 Cum.Supp.), §§ 17–101, et seq., of the Transportation Article.

The respondents and the Court of Special Appeals erroneously assumed that Mr. Neale could not have purchased or registered the Mercedes–Benz without Mrs. Neale because he was excluded from the Nationwide policy under the named driver exclusion provision and was somehow uninsurable.[2] A major premise of the Court of Special Appeals' holding is that Mr. Neale's "lack of insurance precluded him from [obtaining registration] in his own name." 79 Md.App. at 28, 555 A.2d at 522. The fact that Mr. Neale was excluded from the Nationwide policy and may have been without other insurance, however, is irrelevant to the matter of automobile ownership and registration.

In order to register a vehicle in the State of Maryland "the owner or prospective owner of the vehicle" must

---

**2.** Presumably, Mr. Neale could have gotten a driver's policy from another private insurer or perhaps from the Maryland Automobile Insurance Fund (MAIF), Maryland Code (1957, 1986 Repl.Vol., 1990 Cum.Supp.), Art. 48A, §§ 243 *et seq. See National Grange Mut. Ins. v. Pinkney,* 284 Md. 694, 703–704, 399 A.2d 877, 881 (1979).

furnish evidence "that the required security is in effect." Code (1977, 1987 Repl.Vol.), § 17–104 of the Transportation Article.[3] The "minimum required security" means that the automobile is covered by "a vehicle liability insurance policy written by an insurer authorized to write these policies in this State." § 17–103.[4] The required insurance attaches to automobiles and not to individuals.

Nowhere in the Insurance Code or the Vehicle Laws is it provided that a named excluded driver may not own or register a vehicle. Had the Legislature wished to preclude a named excluded driver from becoming an owner or registering a vehicle it would have said so. *See Allstate Ins.*

---

**3.** Section 17–104 provides:
"**§ 17–104. Evidence of security prerequisite to registration.**

"(a) *In general.*—The Administration may not issue or transfer the registration of a motor vehicle unless the owner or prospective owner of the vehicle furnishes evidence satisfactory to the Administration that the required security is in effect.

"(b) *Owner to maintain required security.*—The owner of a motor vehicle that is required to be registered in this State shall maintain the required security for the vehicle during the registration period."

**4.** Section 17–103 states:
"**§ 17–103. Form and minimum benefits of security; annual assessment.**

"(a) *Required form; annual assessment.*—(1) Except as provided in paragraph (2) of this subsection, the form of security required under this subtitle is a vehicle liability insurance policy written by an insurer authorized to write these policies in this State.

(2) The Administration may accept another form of security in place of a vehicle liability insurance policy if it finds that the other form of security adequately provides the benefits required by subsection (b) of this section.

\* \* \* \* \* \*

(b) *Required minimum benefits.*—The security required under this subtitle shall provide for at least:

(1) The payment of claims for bodily injury or death arising from an accident of up to $20,000 for any one person and up to $40,000 for any two or more persons, in addition to interest and costs;

(2) The payment of claims for property of others damaged or destroyed in an accident of up to $10,000, in addition to interest and costs;

(3) Unless waived, the described benefits under Article 48A, § 539 of the Code as to basic required primary coverage; and

(4) The benefits required under Article 48A, § 541 of the Code as to required additional coverage."

*Co. v. Detroit Auto. Inter–Ins.,* 142 Mich.App. 436, 369 N.W.2d 908 (1985).[5] Nothing prevented Mr. Neale from purchasing and registering the Mercedes–Benz in his name alone in light of the facts that the vehicle was covered by an insurance policy which met the Maryland statutory requirements and that there was another family member who drove the vehicle and was covered by the insurance policy. *See Muxlow v. Auto Club Insurance Association,* 152 Mich.App. 817, 394 N.W.2d 121 (1986); *Allstate Ins. Co. v. Detroit Auto, Inter–Ins., supra,* 142 Mich.App. 436, 369 N.W.2d 908; Baker, Shpiece, Jasinksi, *Insurance Law,* 34 Wayne L.Rev. 859, 911–912 (1988).

Moreover, the Court of Special Appeals' holding in this case overlooks the fact that married couples purchase automobiles and other property together for many reasons, totally unrelated to the right to control the operation of the vehicle or other property. As this Court stated in *Nationwide Mut. Ins. Co. v. Stroh,* 314 Md. 176, 183, 550 A.2d 373, 376 (1988), quoting the Supreme Court of Missouri in *Stover v. Patrick,* 459 S.W.2d 393, 401 (Mo.1970):

> " 'Automobiles are frequently jointly titled for various reasons, such as minimizing inheritance taxes, or avoiding the necessity of probate to transfer title to the automobile on death, or to facilitate financing, or for other reasons, none of which have anything to do with a right of control in the operation of the vehicle at the time it is being operated on the highway by the co-owner spouse.' "

The respondents failed to set forth any facts that would reasonably permit an inference that Mr. and Mrs. Neale's

---

**5.** In *Allstate,* the insurer of victims of an automobile accident involving a vehicle owner who was an excluded driver under his own automobile policy denied uninsured motorist coverage to the victims and brought a declaratory action against the excluded driver's insurer. The plaintiff argued that it was against public policy for owners of vehicles to be named excluded drivers. 142 Mich.App. at 438–439, 369 N.W.2d at 909. The Court of Appeals of Michigan, failing to find any statutory language precluding owners from being excluded drivers, rejected Allstate's argument. 142 Mich.App. at 442, 369 N.W.2d at 911.

co-purchase of the 1983 Mercedes–Benz had any relationship to Mr. Neale's driving the vehicle without insurance. The only inference concerning the reason for having the 1983 Mercedes–Benz titled in both names, which might be drawn from the record, is that the vehicle which was traded in on the Mercedes–Benz had been titled in both names.

The Court of Special Appeals relied on this Court's decision in *Kahlenberg v. Goldstein, supra,* 290 Md. 477, 431 A.2d 76, as well as on *McCart v. Muir,* 230 Kan. 618, 641 P.2d 384 (1982), in finding that Mrs. Neale "supplied" the automobile to her husband at the time of purchase. Both *Kahlenberg* and *McCart* upheld jury verdicts, based on negligent entrustment, against fathers who had purchased cars for their sons who had bad driving records. Shortly after the vehicles were purchased, the sons' negligent driving caused plaintiffs' injuries.[6] Both *Kahlenberg* and *McCart* are distinguishable in several important respects. In *Kahlenberg* and in *McCart* the defendants purchased automobiles specifically for the use of the alleged negligent drivers. In the present case, the Mercedes–Benz was not specifically purchased for Mr. Neale's use; instead, the vehicle was normally used by Mrs. Neale.

Furthermore, in *Kahlenberg* and *McCart* there existed a parent-child relationship between the defendants and the entrustees. Mr. Kahlenberg's son was living at home with his parents and was still a minor. *Kahlenberg v. Goldstein, supra,* 290 Md. at 479 n. 1, 431 A.2d at 78 n. 1. The Supreme Court of Kansas in *McCart* noted that the defendant's son "was not an emancipated child. He remained under the control of his parents. The automobile was being operated with the permission of the father." *McCart v. Muir, supra,* 230 Kan. at 621, 641 P.2d at 388. In the case at bar, Mr. and Mrs. Neale are husband and wife, not parent and child. Whatever the law may have

---

**6.** In *Kahlenberg,* the father purchased the vehicle for his son's use. In *McCart,* the father co-purchased the vehicle with his son and co-signed loan documents; the vehicle was for the son's use.

once been, today one spouse does not have authority over the other spouse such as a parent has over a child. *See* the discussion in *Frye v. Frye*, 305 Md. 542, 551–561, 505 A.2d 826, 831–836 (1986). Lastly, the negligent entrustment claims in *Kahlenberg* and in *McCart* were not in any part based upon the entrustees having been drivers excluded from family automobile insurance policies pursuant to a statutory provision.

The respondents alternatively argue that, even if Mrs. Neale was not "liable for negligent entrustment for making her husband an owner of the Mercedes," nevertheless "Mrs. Neale would be liable for negligent entrustment because she failed to exercise her power to prevent her husband from driving the Mercedes at the time of injury." (Respondents' brief, p. 9.)

As the respondents acknowledge, in order for Mrs. Neale to have "supplied" the car to Mr. Neale at the time of the accident, and thus be liable under a negligent entrustment theory, she had to have the power to permit or prohibit Mr. Neale from using the vehicle. *Rounds v. Phillips, supra,* 166 Md. at 167, 170 A. at 538. That power could emanate from a superior right to control the operation of the car, *see Nationwide v. Stroh, supra,* 314 Md. at 182, 550 A.2d at 375, or from a special relationship between the "entrustor" and the driver, such as a parent-child relationship, *see Rounds v. Phillips, supra,* 166 Md. at 167, 170 A. at 538; *McCart v. Muir, supra,* 230 Kan. at 621, 641 P.2d at 388. Mrs. Neale in this case did not have the power to permit or prohibit Mr. Neale's use of the Mercedes because, as co-owner, she did not have superior rights to it. *See Nationwide v. Stroh, supra,* 314 Md. at 182, 550 A.2d at 375. Moreover, as discussed above, she did not have the independent authority over her husband that a parent has over a child.

In *Nationwide v. Stroh, supra,* Mr. and Mrs. Stroh were injured in a two-car accident. Mr. Stroh was driving an automobile which he co-owned with his wife, who was a

passenger at the time of the accident. The other vehicle was driven by Mr. Silberberg, an uninsured motorist. A jury found both Mr. Stroh and Mr. Silberberg to be negligent, and only Mrs. Stroh was awarded damages. *Stroh,* 314 Md. at 178, 550 A.2d at 374. On appeal Nationwide argued that the trial judge erred in not instructing the jury that Mr. Stroh's negligence should have been imputed to Mrs. Stroh barring her recovery because, as an owner, she presumably had a right to control the vehicle. *Ibid.* This Court rejected Nationwide's argument and held that Mrs. Stroh, as co-owner, "can with no degree of logic be said to have had an absolute or superior right to control operation of the automobile, vis-a-vis Richard Stroh, the co-owner driver ... [and that] because of [Mr. Stroh's] equal right to control, [he] would have fair standing to rebuff, and thereby negate, [Mrs. Stroh's] assertion of control." 314 Md. at 182, 550 A.2d at 375.

Other jurisdictions are in agreement with this reasoning. *See, e.g., Bahm v. Dormanen,* 168 Mont. 408, 543 P.2d 379 (1975); *Rushing v. Polk,* 258 N.C. 256, 128 S.E.2d 675 (1962).[7] Thus in *Rushing v. Polk, supra,* the plaintiff was injured as a passenger in the defendant's car while the defendant's wife was driving. The court found evidence to support a jury finding that the automobile was jointly owned by the husband and wife although it was registered in the husband's name only. *Rushing, supra,* 258 N.C. at 262, 128 S.E.2d at 680. The court then stated that "joint ownership of an automobile does not render one joint owner liable for an injury caused by another joint owner who is using the vehicle for his or her own purpose and is unaccompanied by the co-owner." Later in the opinion the court stated (258 N.C. at 263, 128 S.E.2d at 681):

"Where a motor vehicle is jointly owned each joint owner has the right to use and control the vehicle without the

---

**7.** *But see Mettelka v. Superior Court,* 173 Cal.App.3d 1245, 219 Cal. Rptr. 697 (1985); *Krum v. Malloy,* 22 Cal.2d 132, 137 P.2d 18 (1943), taking a view contrary to that adopted by this Court in *Nationwide v. Stroh, supra.*

permission, knowledge and approval of the other. Each uses it in his or her own right and not by permission of the other, in the absence of the other, unless there is proof of circumstances which in law amount to an actual agency."

Under the reasoning in *Nationwide v. Stroh,* and similar cases, where a husband and wife own an automobile, neither ordinarily has the power to permit or prohibit the other from using the vehicle.

Finally, the holding of the Court of Special Appeals and the arguments of the respondents are inconsistent with the public policy underlying the named driver exclusion provision of the Maryland Insurance Code, Art. 48A, § 240C–1.

█ The named driver exclusion provision was part of a comprehensive legislative scheme to require that all motor vehicles registered in the State of Maryland be insured. *See generally Jennings v. Government Employers Ins.,* 302 Md. 352, 488 A.2d 166 (1985); *Grant v. Allison,* 616 F.Supp. 1219 (D.Md.1985). *See also Nationwide Mutual Ins. Co. v. Miller,* 305 Md. 614, 505 A.2d 1338 (1986). The purpose of the provision is to allow a family automobile to remain insured, instead of having the insurance policy cancelled, by excluding from the insurance policy a member of the household whose driving record would have warranted a cancellation of the policy. Allowing a driver to be specifically excluded avoids cancellation or non-renewal of policies and permits the other family members to retain the required security on the family car. Without the named driver exclusion provision, insurance might be difficult to obtain for many vehicles.

The facts in the case at bar present a typical situation where the named driver exclusion provision was intended to be and is utilized. Very often, as in this case, the family car is co-owned by both spouses, and one spouse, because of his or her driving record, is excluded from the insurance policy on the family car in lieu of the policy being cancelled or non-renewed. Since the insurance policy on the vehicle

remains in effect, the statutorily required security is maintained and the other spouse remains insured under the policy. If the insurer of the family car were still liable under the policy if the excluded driver operates the vehicle, on a theory of negligent entrustment by the non-excluded insured spouse, the purpose of the named driver exclusion provision would be defeated. Insurers would be indirectly liable for the injuries caused by the negligent driving of the excluded drivers despite the legislative intent to the contrary.

In *Nationwide Ins. Co. v. Miller, supra,* 305 Md. 614, 505 A.2d 1338, this Court rejected an effort to make the insurer of the family car indirectly liable when the vehicle was being operated by the named excluded driver whose negligence caused injury to a passenger. *Miller,* like the case at bar, involved a situation where one spouse, Michael Rush, had been excluded from the Nationwide insurance policy on the family car, with his wife remaining as an insured under the policy. Mr. Rush had not obtained insurance elsewhere. In *Miller,* as in the present case, the excluded spouse was driving the family car negligently when it was involved in an accident. The plaintiff Miller, a passenger in the family car driven by Mr. Rush, was injured in the accident. Miller had his own automobile insurance policy. Under the circumstances, for liability insurance purposes, the Rush family car was an uninsured vehicle when it was being operated by Mr. Rush. The issue in the *Miller* case was whether Nationwide, as the insurer of the Rush car, was liable to the passenger Miller under the uninsured motorist endorsement of its policy, or whether Miller's own insurer was responsible under the uninsured motorist endorsement of Miller's policy. This Court held that Nationwide was not liable, and that Miller's insurer was liable, stating (305 Md. at 617–619, 505 A.2d at 1339–1340):

"Nationwide contends that [Art. 48A,] § 240C–1[,] and the [named driver exclusion] policy endorsement permit it to consider the policy on the Rush car void while Michael Rush drives the car[, as to claims arising from the exclud-

ed individual's driving of the car]. Otherwise, according to Nationwide, the purpose of § 240C–1 would be defeated. Nationwide argues that, if the claimant can circumvent the exclusion of liability coverage by claiming under the uninsured motorist portion of the policy, then the insurer is still exposed to risks posed by the bad driver, while forbidden to reflect those risks in its premium.

*    *    *    *    *    *

"We believe that the position urged by [Miller's insurer] would defeat the purpose of the named excluded driver provision in § 240C–1. As the plain language of that section shows, the purpose was to exclude risks arising from the named person's negligence in driving the car. If the uninsured motorist coverage on a vehicle were deemed applicable when the driver is excluded from the vehicle's ordinary liability coverage, then the insurer would in effect still be insuring the liable driver, who had a bad claims or driving record, but the insurer would be denied the appropriate premium."

As pointed out above, the purpose of Art. 48A, § 240C–1, "was to exclude risks arising from the named person's negligence in driving the car." In *Miller*, we refused to allow this legislative purpose to be circumvented by utilizing the uninsured motorist provision of the policy. In the present case, we similarly shall not permit circumvention of the legislative purpose by stretching the doctrine of negligent entrustment.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY. RESPONDENTS TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.