675 A.2d 122

## BLUE BIRD CAB CO., INC.

v.

## AMALGAMATED CASUALTY INSURANCE COMPANY.

No. 1015, Sept. Term, 1995.

Court of Special Appeals of Maryland.

April 2, 1996.

Reconsideration Denied May 28, 1996.

380

Gregory K. Wells (John M. Smallwood and Smallwood, Wells & Pugh, P.A., on the brief), Largo, for appellant.

Samuel M. Forstein (Robert J. Gage, Mark E. Plotkin, Covington & Burling and Mark A. Gilder, on the brief), Washington, DC, for appellee.

Argued before FISCHER, CATHELL and SALMON, JJ.

SALMON, Judge.

This case began on May 22, 1990, when Margaret C. Streett filed suit in the Circuit Court for Prince George's County against Blue Bird Cab Company, Inc. ("Blue Bird") and Juliette Lamont. Ms. Streett alleged that she had been injured while a passenger in a Blue Bird taxicab driven by Ms. Lamont on August 4, 1989. Blue Bird requested that its insurance carrier, Amalgamated Casualty Insurance Company ("Amalgamated"), defend it and provide coverage for any liability as a result of the accident. Appellee Amalgamated denied coverage. Blue Bird filed a Third Party Complaint for Declaratory Judgment against Amalgamated on April 10, 1991, requesting that the circuit court declare "that Blue Bird Cab Co., Inc., is covered under the Insurance Policy issued by Amalgamated Casualty Insurance Company for any loss re-

sulting from the Complaint filed [by Ms. Streett] and that Amalgamated is responsible for the defense of this action."

The court heard evidence on the third-party complaint on April 8, 1993. At the close of Blue Bird's case, the trial judge entered a judgment in favor of Amalgamated, stating, "I have to conclude that [Blue Bird] ha[s] not succeeded in establishing that there was insurance coverage existing under the policy of insurance with Amalgamated Casualty Insurance Company." Blue Bird appeals from this decision and presents four questions for our resolution:

I. Is the Amalgamated insurance policy ambiguous?

II. Did Amalgamated waive enforcement of exclusion (g), which excludes coverage when a taxicab is driven by someone who is not listed as an additional named insured?

III. Is exclusion (g) void as against public policy?

IV. Is exclusion (g) valid as to coverage above the statutory minimum prescribed by the compulsory insurance law?

We answer the first two questions in the negative, and the second two in the affirmative.

## FACTS

Ms. Lamont was hired by Blue Bird in August 1988 as a taxicab driver-operator. At the April 8, 1993, trial on the declaratory judgment claim, Stanley Bretner, president of Blue Bird, testified that, on the day Ms. Lamont was hired, he instructed her to go to the Amalgamated offices for approval and listing as an additional named insured on Blue Bird's taxicab liability insurance policy. Mr. Bretner further testified that shortly thereafter he received a telephone confirmation from Amalgamated that Ms. Lamont had been approved as a driver.[1]

The policy at issue provided:

---

1. On December 22, 1993, after the resolution of Blue Bird's third-party action against Amalgamated, Ms. Lamont filed an affidavit stating that

## III. PERSONS INSURED

Each of the following is an insured under this insurance
. . . :

(a) the named insured, and

(b) any other individual named as an additional named
insured in the declarations or endorsements issued to form
a part of this policy, provided each person holds a valid
license to operate a taxicab.

The named insured under the policy was Blue Bird. The
term "insured" is defined in the policy as "a person described
above under 'Persons Insured.' "

The policy declaration dated September 20, 1988, listed as
insured 157 vehicles,[2] for which Blue Bird was charged a
premium of either $93.79 or $101.44 for each per month. The
same policy listed 150 drivers as additional named insureds.[3]

Exclusion (g) states that the policy does not apply "while
the automobile is being driven by a natural person not named
in the declarations or endorsements issued to form a part of
this policy." Finally, the cover page of the policy declares:
"NOTICE: The names of any person who operates your
vehicle must be provided to the insurance company and listed
on this policy."

---

Blue Bird had never mentioned Amalgamated's name and had never
instructed her to go to the Amalgamated offices for insurance approval
at any time prior to the accident.

**2.** The policy covered 69 vehicles that were listed as part of the "Blue
Bird" fleet at the $93.79 premium. It also covered 20 vehicles listed as
part of the "Suburban" fleet, all at the same $93.79 premium. Another
68 covered vehicles were listed as part of the "Yellow" fleet. The
premium on most of these was $93.79; the premium on the rest was
$101.44. We are not sure what the various "fleet" designations indi-
cate. We note, however, that on cross-examination, Mr. Bretner stated
that he was running several taxicab companies besides Blue Bird in
1989, including Action Cab, Yellow Cab, and Laurel Cab.

**3.** The September 20, 1988, declaration was the most recent one sent to
Blue Bird prior to the August 1989 accident. Blue Bird received
another declaration dated November 15, 1989, three months after the
accident, which covered a total of 174 vehicles and 271 additional
named insureds.

On May 17, 1988, Amalgamated sent Blue Bird a letter reminding it that "the names of any and all drivers must be provided to the insurance company for processing; otherwise, there is no coverage under the policy." On October 27, 1988, Amalgamated sent a similar letter stating, *"the names of any and all drivers must be provided to the insurance company, and the list must be kept current; otherwise there is no coverage under the policy."* (Emphasis in the original.) Mr. Bretner testified that he was aware that a driver had to be listed to be covered.

According to Mr. Bretner's testimony, once Blue Bird sent a potential driver to Amalgamated for approval, Amalgamated never sent written confirmation. Instead, Amalgamated would phone Blue Bird with its approval. Blue Bird would, however, receive, albeit at irregular intervals, declaration pages to the policy that listed the names of all drivers approved by Amalgamated as additional named insureds. Blue Bird received updated declaration pages dated September 6, 1988 and September 20, 1988, but Ms. Lamont's name did not appear on either list. Blue Bird received no lists in 1989 until three months after the accident. There is no dispute that Ms. Lamont's name never appeared on a declaration page listing additional named insureds under the policy.

On August 4, 1989, Ms. Lamont was involved in an accident while driving a Blue Bird taxicab. Her passenger, Ms. Streett, was severely injured. Ms. Streett sued Ms. Lamont and Blue Bird, as noted above. Blue Bird filed a cross-claim for indemnification against Ms. Lamont. The tort action went to trial in front of a jury on October 26, 1994. The jury returned a verdict of $415,000 in favor of Ms. Streett. The trial judge entered judgment in favor of Blue Bird on the cross-claim. While post-judgment motions were pending, Blue Bird settled the action that Ms. Streett had filed against it.[4] Blue Bird then filed this timely appeal.

---

4. The amount of the settlement is not disclosed in the record.

## DISCUSSION

## I.

 Blue Bird asks us to determine whether the insurance policy issued to it by Amalgamated was ambiguous. Blue Bird asserts that exclusion (g) is "clearly ambiguous" because it is not "clear if this exclusion applies to *both* the named insured, as well as the driver operator."

 "We have made it clear that where an insurance company, in attempting to limit coverage, employs ambiguous language, the ambiguity will be resolved against it as the one who drafted the instrument, as is true in the construction of contracts generally." *Haynes v. American Casualty Co.*, 228 Md. 394, 400, 179 A.2d 900 (1962). Where there is no ambiguity in an insurance contract, however, the Court has no alternative but to enforce the policy's terms. *Howell v. Harleysville Mut. Ins. Co.*, 305 Md. 435, 505 A.2d 109 (1986).

We see no ambiguity in the language of the policy. The exclusion plainly applies to both Blue Bird and any natural person who is not listed as an additional named insured in the declaration.

## II.

 Blue Bird also argues that Amalgamated waived the condition that a driver be listed as an additional named insured. Blue Bird contends that it sent Ms. Lamont to Amalgamated to be listed and that it received confirmation of her approval by phone. Blue Bird further contends that Amalgamated's practice of never sending a written confirmation of a listing constitutes a waiver of the exclusion, even though it would receive, at irregular intervals, declaration pages, which purported to list all additional named insureds. Blue Bird argues that it was "led to believe that [it was] following the standard procedures in order to list Lamont as an additional named insured."

Waiver is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances." *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 531, 200 A.2d 166 (1964), *quoted in GEICO v. Medical Servs.*, 322 Md. 645, 650, 589 A.2d 464 (1991). "Any acts or conduct of the insurer or its representatives, that are, under the circumstances, calculated to mislead the insured and to induce him to believe that performance of the condition will not be required, or that proofs of loss would be ineffectual and nugatory, will, if he is thereby misled, amount to a waiver." *Citizen's Mut. Fire Ins. Co. v. Conowingo Bridge Co.*, 113 Md. 430, 440, 77 A. 378 (1910).

There was no action by Amalgamated that can be construed as evidencing an intent not to enforce the additional named insured exclusion. According to Mr. Bretner, he sent Ms. Lamont to Amalgamated for approval in August of 1988. Amalgamated sent Blue Bird two declaration sheets listing additional named insureds in September 1988, neither of which listed Ms. Lamont as an insured. The cover page of the policy in question notifies the insured that the "name of any person who operates your vehicle must be provided to the insurance company *and* listed on this policy." (Emphasis added.) We find that the trial judge was correct in rejecting appellant's argument that it had proven a waiver in this case.

### III.

Blue Bird also argues that exclusion (g) is void as against public policy and should not be enforced to deny coverage.

The Maryland statutory insurance scheme requires, with a few narrow exceptions, that every owner of a registered motor vehicle maintain liability coverage for personal injury of $20,000 for any one person, $40,000 for any accident, and $10,000 for property damage. Md.Code (1977, 1992 Repl.Vol.),

§ 17–103(b) of the Transportation Article.[5] The required insurance attaches to automobiles, not to persons. *Neale v. Wright,* 322 Md. 8, 14, 585 A.2d 196 (1991). The Maryland Code also requires that every owner of a registered motor vehicle maintain personal injury protection (PIP) benefits of $2,500, and uninsured motorist (UM) insurance in specified minimum amounts. Md.Code (1957, 1994 Repl.Vol., 1995 Supp.), Art. 48A, §§ 539–541.[6]

■■■■ "The purpose of Maryland's compulsory insurance law is to ensure that those who own and operate motor vehicles registered in the State are 'financially able to pay compensation for damages resulting from motor vehicle accidents.'" *Enterprise Leasing Co. v. Allstate Ins. Co.,* 341 Md. 541, 549, 671 A.2d 509 (1996) (quoting *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman,* 288 Md. 151, 154, 416 A.2d 734 (1980)).

---

5. Section 17–103 provides:

**§ 17–103. Form and minimum benefits of security** ....

(a) *Required form* .... —(1) ... the form of security required under this subtitle is a vehicle liability insurance policy written by an insurer authorized to write these in this State.

....

(b) *Required minimum benefits.*—The security required under this subtitle shall provide for at least:

(1) The payment of claims for bodily injury or death arising from an accident of up to $20,000 for any one person and up to $40,000 for any two or more persons, in addition to interest and costs;

(2) The payment of claims for property of others damaged or destroyed in an accident of up to $10,000, in addition to interest and costs;

(3) Unless waived, the benefits described under Article 48A, § 539 of the Code as to basic required primary coverage; and

(4) The benefits required under Article 48A, § 541 of the Code as to required additional coverage.

These minimum benefits requirements are inapplicable to state-owned and operated vehicles. *Nationwide Mut. Ins. Co. v. United States Fidelity & Guar. Co.,* 314 Md. 131, 550 A.2d 69 (1988). Farm equipment and vehicles used only to cross highways are also exempted. Md.Code (1977, 1992 Repl.Vol.), § 17–102 of the Transportation Article.

6. Buses and taxicabs are not required to carry PIP or UM coverage. *See* Md.Code (1957, 1994 Repl.Vol.), Art. 48A, §§ 538(b), 539(e).

"[O]nce an automobile liability policy is certified as proof of financial responsibility ... it becomes an insurance policy for the benefit of the public using the highways of this State. Therefore, it may not contain exclusions which destroy the effectiveness of the policy as to any substantial segment of that public."

*Larimore v. American Ins. Co.,* 314 Md. 617, 626, 552 A.2d 889 (1989) (quoting *Makris v. State Farm Mut. Auto. Ins. Co.,* 267 So.2d 105, 108 (Fla.Dist.Ct.App.1972)).

"[A] clause in an insurance policy which is contrary to 'the public policy of this State, as set forth in ... the Insurance Code' or other statute, is invalid and unenforceable." *Jennings v. GEICO,* 302 Md. 352, 356, 488 A.2d 166 (1985). Where the legislature has mandated insurance coverage, this Court will not create exclusions that are not specifically set out in the statute. *Enterprise Leasing Co., supra,* 341 Md. at 547, 671 A.2d 509; *see also Larimore, supra,* 314 Md. at 622, 552 A.2d 889; *Jennings, supra,* 302 Md. at 358–59, 488 A.2d 166. We refuse to do so because "if any and all exclusions from this required liability coverage are valid as long as they are not expressly prohibited by statute, the purpose of the compulsory automobile liability insurance could be frustrated to a significant extent." *Jennings, supra,* 302 Md. at 360, 488 A.2d 166.

Maryland courts have invalidated insurance policy exclusion clauses that are inconsistent with the public policy of this State. *See Larimore, supra,* 314 Md. at 622, 552 A.2d 889 (holding "fellow employee" exclusion invalid); *Jennings, supra,* 302 Md. at 356–60, 488 A.2d 166 (holding "household" exclusion invalid); *Gartelman, supra,* 288 Md. at 156–57, 416 A.2d 734 (holding that exclusion from PIP and UM coverage for an insured who is injured while occupying an uninsured motor vehicle owned by a named insured invalid); *West Am. Ins. Co. v. Popa,* 108 Md.App. 73, 86–87, 670 A.2d 1021 (1996) (holding that exclusion of government-owned vehicles from the definition of "uninsured motor vehicle" is void). This problem

was very recently addressed in *Enterprise Leasing Co., supra.* The Court of Appeals held that, where a leased motor vehicle is involved in an accident while driven by a person having the lessee's permission, the lessor of the motor vehicle must cover damages to third parties under its required security. *Enterprise Leasing Co., supra,* 341 Md. at 547–52, 671 A.2d 509. The Court based its holding on the language of section 18–102(b) of the Transportation Article.[7] The Court held that public policy demanded this result regardless of whether the person driving was authorized or unauthorized to drive the leased vehicle under the terms of the rental agreement, even though section 18–106 of the Transportation Article specifically allows a leasing company to exclude drivers.[8] *Id.*

The Court of Appeals has reasoned that, to uphold exclusions not found in the compulsory insurance statutory scheme, "would result in a large class of claimants being without liability insurance coverage and in a large class of uninsured motorists." *Larimore, supra,* 314 Md. at 625, 552 A.2d 889; *see also Jennings, supra,* 302 Md. at 360 n. 9, 488 A.2d 166 ("The instant case deals with a policy exclusion that would exclude classes of people.").

---

7. Md.Code (1977, 1992 Repl.Vol.), § 18–102(b) of the Transportation Article provides: *"Persons to be covered by security.*—Notwithstanding any provision of the rental agreement to the contrary, the security required under this section shall cover the owner of the vehicle and each person driving or using the vehicle with the permission of the owner or lessee."

8. Md.Code (1977, 1992 Repl.Vol.), § 18–106 of the Transportation Article states:
 § **18–106. Unauthorized use of rented motor vehicle.**
 (a) *Lessees permitting other persons to drive rented motor vehicles.*— If a person rents a motor vehicle under an agreement not to permit another person to drive the vehicle the person may not permit any other person to drive the rented motor vehicle.
 (b) *Rental agreements prohibiting other persons from driving vehicles.*—If a person rents a motor vehicle under an agreement not to permit another person to drive the vehicle no other person may drive the rented motor vehicle without the consent of the lessor or his agent.

The exclusion here at issue would result in a large class of claimants—the entire public—being without liability insurance coverage and in a large class of uninsured motorists—a taxicab owner as well as his or her authorized drivers whenever that cab driver is not listed on the policy. As shown by the letters Amalgamated sent to Blue Bird, it is foreseeable that Blue Bird might permit someone whose name did not appear on the declarations page regularly to operate one of the 157 taxicabs insured. This could happen if Blue Bird, either intentionally or unintentionally, did not notify Amalgamated of a new driver, or if Amalgamated was notified but inadvertently failed to list a driver on the declaration sheet.

It is also foreseeable by the insurance company that there are quite a number of other occasions in which Blue Bird taxicabs would be on the road but not operated by regularly assigned drivers, who, under Amalgamated's theory, would be uninsured. *Cf. Enterprise Leasing Co., supra,* 341 Md. at 550–51, 671 A.2d 509; *Motor Vehicle Accident Indem. Corp. v. Continental Nat'l Am. Group Co.,* 35 N.Y.2d 260, 360 N.Y.S.2d 859, 861–62, 319 N.E.2d 182, 184 (1974). For instance, Mr. Bretner testified at trial that people other than additional named insureds drove Blue Bird taxicabs to biannual state inspections and to county inspections. Often, he would drive cabs to such inspections himself, or "someone from the shop would do so." Cabs might also be driven by garage personnel in the course of determining mechanical problems or testing to see if repairs have been properly made. If these drivers are not covered by the required security, accidents in which they are involved could result in injured claimants who would have no recourse to compensation from a private insurance fund. *See Larimore, supra,* 314 Md. at 625, 552 A.2d 889; *Jennings, supra,* 302 Md. at 360, 488 A.2d 166.

We recognize that the Court of Appeals stated in *National Grange Mut. Ins. Co. v. Pinkney,* 284 Md. 694, 399 A.2d 877 (1979), that "there is no provision in any Maryland statute . . . which requires an omnibus clause to appear in any motor vehicle liability insurance policy." *Id.* at 704–05, 399

A.2d 827.[9] In *Washington Metro. Area Transit Auth. v. Bullock*, 68 Md.App. 20, 509 A.2d 1217, *cert. denied*, 308 Md. 237, 517 A.2d 1120 (1986), we said that "it has not been regarded against public policy in this State for an insurer to disclaim or deny coverage when an insured vehicle is being used by someone other than the 'named insured'...." *Id.* at 30, 509 A.2d 1217. We went on to note:

> It is certainly arguable, however—and we think meritoriously so—that where, as here, the vehicles are owned by a corporate-type entity, which has acquired them specifically for use by its employees, i.e., persons other than the named insured, public policy would indeed demand the kind of extended coverage normally provided in an omnibus clause.... We shall assume, therefore, that the Court's statement [in *Pinkney, supra*] was not intended to apply to this kind of case, and that extended coverage to employees, at least while using company vehicles within the scope of permission granted by the company, is required in Maryland.

*Id.* at 30 n. 7, 509 A.2d 1217.

Ms. Lamont was hired as an independent contractor and was given permission to drive a Blue Bird taxicab. The accident involving Ms. Lamont occurred while she was using the Blue Bird taxicab within the scope of permission granted to her by the company. Neither Ms. Streett nor the public generally had any way of knowing that Ms. Lamont was not covered under Blue Bird's insurance policy. We find that the situation at issue in this case is analogous to that discussed in *Bullock,* and we find the language quoted above instructive.

No statutory provision authorizes an insurer to exclude those who are not additional named insureds. It is the General Assembly's role to determine whether such persons are to be excluded from coverage. *See Enterprise Leasing*

---

9. An omnibus clause in an automobile insurance policy "extends coverage thereunder to [a] person using [an] automobile owned by [a] named insured with express or implied permission of the latter." Black's Law Dictionary 1087 (6th ed. 1990).

*Co., supra,* 341 Md. at 551–52, 671 A.2d 509. We will not read an exclusion into the statute.[10]

■■■■ Appellee argues that *Nationwide Mut. Ins. Co. v. Miller,* 305 Md. 614, 505 A.2d 1338 (1986), supports its contention that exclusion (g) is not void as against public policy. In *Miller,* the Court of Appeals held that the named excluded driver endorsement prevented a passenger, who was otherwise covered as an additional insured, from collecting UM benefits when the insured vehicle was in a collision while being driven by the excluded driver. This result is mandated, however, by Maryland Code (1957, 1994 Repl.Vol.), Art. 48A, § 240C–1(b)(1), which states that an "insurer may issue [a] policy but exclude all coverage when a motor vehicle is operated by the specifically named excluded person."[11] In the case

---

**10.** In fairness to the trial judge, this issue was not briefed by either party in the trial court. The only mention of the void as against public policy argument came when appellant responded to appellee's motion for judgment at the close of appellant's case. The attorney for Blue Bird stated,

> Your Honor is well aware of the cases such as *Jennings vs. GEICO, State Farm vs. Nationwide,* and other cases in the Court of Appeals. What the Court says in other context dealing with automobile liability policies that we won't read exclusions that will wipe away complete [sic] the coverage, because there is a policy, a very strong policy in this State that there is at least 20–40 coverage provided for every automobile that is driven in this State. It's in the policy. You will also look at that policy in which there is a policy provision that says that we are issuing you Blue Bird, our policy, and we are complying with the Financial Responsibility Act of your State.

Appellant's attorney then segued into a discussion as to why Blue Bird's waiver argument had merit. Trial counsel for appellee made no reply to any of appellant's arguments that were made in opposition to the motion.

**11.** Section 240C–1 reads in its entirety:
**§ 240C–1. Exclusion of named driver.**
(a)(1) In any case where an insurer is authorized under this article to cancel or nonrenew or increase the premiums on an automobile liability insurance policy issued in this State to any resident of a household, under which more than 1 person is insured because of the claim experience or driving record or 1 or more but less than all of the persons insured under the policy, the insurer shall in lieu of cancellation, nonrenewal, or premium increase offer to continue or renew the insurance, but to exclude all coverage when a motor

*sub judice,* Ms. Lamont was not mentioned in the policy. She therefore was not a "specifically named excluded person" in the policy issued by Amalgamated. Section 240C–1 has no application to this case.

Appellee also argues that *Neale, supra,* supports its contention that exclusion (g) is not void as against public policy. The

vehicle is operated by the specifically named excluded person or persons whose claim experience or driving record would have justified the cancellation or nonrenewal. The policy may be endorsed to specifically exclude all coverage for any of the following when the named excluded driver is operating the motor vehicle(s) covered under the policy whether or not that operation or use was with the express or implied permission of a person insured under the policy:

(i) The excluded operator or user;

(ii) The vehicle owner;

(iii) Family members residing in the household of the excluded operator or user or vehicle owner; and

(iv) Any other person, except for the coverage required by §§ 539 and 541(c)(2) of this article if such coverage is not available under any other automobile policy.

(2) The premiums charged on any policy excluding a named driver or drivers under paragraph (1) of this subsection shall not reflect the claims experience or driving record of the excluded named driver or drivers.

(b)(1) In any case where an insurer could legally refuse to issue a policy of automobile liability insurance under which more than 1 person is insured because of the claim experience or driving record of 1 or more but less than all of the persons applying to be insured under the policy, the insurer may issue the policy but exclude all coverage when a motor vehicle is operated by the specifically named excluded person or persons whose claim experience or driving record could have justified the refusal to issue.

(2) The policy may be endorsed to specifically exclude all coverage for any of the following when the named excluded driver is operating the motor vehicle(s) covered under the policy whether or not that operation or use was with the express or implied permission of a person insured under the policy:

(i) The excluded operator or user;

(ii) The vehicle owner;

(iii) Family members residing in the household of the excluded operator or user or vehicle owner; and

(iv) Any other person, except for the coverage required by §§ 539 and 541(c)(2) of this article if such coverage is not available under any other automobile policy.

(3) The premiums charged on any policy excluding a named driver or drivers under paragraphs (1) and (2) of this subsection may not reflect the claims experience or driving record of the excluded named driver or drivers.

*Neale* decision, like *Miller*, dealt with the "named driver exclusion provision of the Maryland Insurance Code, Art. 48A § 240C–1." *Id.* at 21, 585 A.2d 196. The Court of Appeals found in *Neale* that the purpose of the named driver exclusion provision is to allow a family automobile to remain insured, instead of having the insurance policy cancelled, by excluding from coverage a member of the household whose driving record would have warranted a cancellation of the policy.

> Since the insurance policy on the vehicle remains in effect, the statutorily required security is maintained and the other spouse remains insured under the policy. If the insurer of the family car were still liable under the policy if the excluded driver operates the vehicle, on a theory of negligent entrustment by the non-excluded insured spouse, the purpose of the named driver exclusion provision would be defeated. Insurers would be indirectly liable for the injuries caused by the negligent driving of the excluded drivers despite the legislative intent to the contrary.

*Id.* at 22, 585 A.2d 196.

Amalgamated argues that *Miller* and *Neale* are apposite because Ms. Lamont was a "lawfully excluded" driver. This argument simply begs the question. Ms. Lamont can be termed "lawfully excluded" only if some provision of the Maryland Insurance Code explicitly or implicitly allows for such an exclusion. Article 48A, § 240C–1 does not either explicitly or implicitly allow exclusion (g) as set forth in the Blue Bird policy. As a consequence, reliance on *Miller* and *Neale* is completely misplaced.[12]

---

12. Appellee cites only one other case in support of its position that the exclusion is not void as against public policy, *i.e., Maryland Auto. Ins. Fund v. Sun Cab Co., Inc.,* 305 Md. 807, 506 A.2d 641 (1986). In that case, the Court of Appeals held that Maryland Code (1957, 1994 Repl.Vol.), Art. 48A, § 538(b) clearly and unambiguously exempts taxicabs from carrying UM insurance. *Sun Cab Co.* plainly has no relevance to the case *sub judice.*

## IV.

▇▇▇▇▇▇ The insurance policy issued to Blue Bird provided liability limits of $25,000 per person and $50,000 per accident. Mandatory coverage, as noted above, is only $20,000. Maryland courts have held "only that an exclusion that eliminates mandatory coverage is invalid as against public policy." *State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.,* 307 Md. 631, 638, 516 A.2d 586 (1986). Thus, exclusion clauses (such as exclusion (g) in this case) that are held void as against public policy are void only to the extent of the minimum statutory liability coverage.[13] *See Larimore, supra,* 314 Md. at 622 n. 2, 552 A.2d 889; *State Farm, supra,* 307 Md. at 644, 516 A.2d 586; *Walther v. Allstate Ins. Co.,* 83 Md.App. 405, 411, 575 A.2d 339 (1990).[14] The exclusion, therefore, is only

---

**13.** Appellant never contended in the lower court that Blue Bird was entitled to coverage above the statutory minimum. It argued the opposite in response to appellee's motion for judgment, stating that the trial court should declare that "[t]he Financial Responsibility Act in this ambiguous phrase, requires the Court [sic] to define that there is coverage for Blue Bird Cab Company in the amount of $20,000 per person, $40,000 per occurrence in this accident."

**14.** This Court recently recognized this rule in *Popa, supra,* 108 Md.App. at 86–88, 670 A.2d 1021, as applied to liability limits. The Court said:

When applied in the context of *liability* coverage, as illustrated by *State Farm, Larimore,* and *Walther,* this rule allows for the application of an otherwise invalid exception above the $20,000/$40,000 threshold. The reason for this is the legislature's intent that each insured have coverage in at least those amounts.

By contrast, when applied in the context of uninsured or underinsured motorist coverage, the principle announced in the cited cases does not necessarily allow for the application of an otherwise invalid exception above the $20,000/$40,000 minimum. The legislature intended that an insured be allowed to collect up to the limits of his uninsured motorist coverage. The difference between the liability coverage context and the uninsured motorist coverage context was implicitly recognized in *Powell.* There, we noted that if an exclusion in an uninsured motorist policy were invalid, it would only be invalid up to the $20,000/$40,000 minimum; but we immediately qualified this statement by inserting a footnote recognizing the legislative intent that an insured be paid up to the limits of his uninsured motorist coverage. *See Powell [v. State Farm Ins. Co.],* 86 Md.App. [98] at 113 n. 4 [585 A.2d 286 (1991)] (citing *Aetna Cas. & Sur. Co. v. Souras,* 78 Md.App. 71, 75–76 [552 A.2d 908] (1989)).

invalid up to the $20,000 per person per accident limit mandated by statute. The exclusion has full force on any amount above that minimum.

JUDGMENT REVERSED AND CASE REMANDED TO CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH DIRECTION TO ISSUE AN ORDER DECLARING THE RIGHTS OF THE PARTIES IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.

The provisions in West American's policy that exclude government-owned vehicles from the definition of "uninsured motor vehicle" are void because they violate the legislatively-announced public policy of Maryland. Further, we hold that these exclusions are void up to the limits of the uninsured motorist coverage provided. *Id.* at 88, 670 A.2d 1021.